**Arthur WILLIAMS, et ux., Appellants,**

**v.**

**Roger GERSTENFELD, et al.,
Appellees.**

**No. 84–1031.**

District of Columbia Court of Appeals.

Argued Sept. 17, 1985.
Decided Sept. 10, 1986.

closing because the petition was filed under circumstances which did not entitle the petitioner to the benefit of the automatic stay. We find appellants' other contentions unpersuasive. Having failed to contest with specificity appellees' statement of undisputed facts in support of the motion for summary judgment, appellants cannot prevail on the ground the trial court erred in accepting appellees' verified version of the facts as admitted. In addition, appellants are barred by *res judicata* as a result of the bankruptcy court proceedings based on the first petition in bankruptcy from litigating issues relating to their indebtedness to appellees; although appellant Mrs. Williams was not a party to the bankruptcy proceedings, she nevertheless is barred by *res judicata* because appellants owned their home as tenants by the entirety. Accordingly, we affirm.

Melvin A. Marshall, Washington, D.C., for appellants.

Thomas Hylden, Washington, D.C., for appellees.

Before MACK, ROGERS and STEADMAN, Associate Judges.

ROGERS, Associate Judge:

Appellants appeal the granting of summary judgment to appellees on appellants' complaint for injunctive and other relief relating to the foreclosure of their home. Their principal contention is that appellees were precluded from foreclosing by the automatic stay provision of the United States Bankruptcy Act, 11 U.S.C. § 362 (1982), which took effect when Mr. Williams filed a second petition in bankruptcy. We hold the filing of the second petition in bankruptcy did not bar appellees from fore-

## I

On May 1, 1980, appellees [1] loaned appellants—Mr. and Mrs. Williams—$38,500.00. The loan was secured by a second deed of trust on the Williams' home. The Williams signed a promissory note and a deed of trust, with monthly payments on the loan and repayment of the loan by May 1, 1981. When they defaulted on the monthly payments, Gerstenfeld scheduled foreclosure proceedings for January 16, 1981, unless the amounts due were immediately paid.

The day before foreclosure, Mr. Williams filed a petition for a wage earner's voluntary debt reorganization under Chapter 13 of the Bankruptcy Act in the United States Bankruptcy Court for the District of Columbia. *In Re Arthur B. Williams*, No. 81–0017 (Bankr.D.C. January 15, 1981). The filing automatically stayed the foreclosure proceedings pursuant to 11 U.S.C. § 362 (1982).[2] Gerstenfeld filed a com-

---

**1.** Appellees are Roger Gerstenfeld and his company, Pension Mortgage Investments, Inc. We refer hereafter to appellees as Gerstenfeld.

**2.** 11 U.S.C. § 362(a) (1982) provides for an automatic stay of:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to

plaint to modify the stay on the ground he would suffer irreparable harm if not permitted to foreclose on his deed of trust. Mr. Williams answered, claiming he expected to obtain refinancing by May 1, 1981, and to propose a Chapter 13 plan for consideration of the bankruptcy court. He also maintained the bankruptcy court should not exercise its equitable powers to permit foreclosure while his contentions that the loan was unconscionable remained unresolved.

Judge Whelan of the bankruptcy court scheduled a hearing on Gerstenfeld's complaint to modify the stay and a trial on the merits. Prior to the hearing on the complaint, the parties reached agreement. On March 16, 1981, Judge Whelan issued a consent order which recited that he had considered "the entire record of this adversary proceeding," and the parties had agreed Gerstenfeld would not commence foreclosure proceedings before May 1, 1981, if Mr. Williams timely paid $1,155.00 due on the note. The order provided the automatic stay under the Bankruptcy Act would terminate on May 1, 1981, if the entire balance due on the note was not then paid and Gerstenfeld would be allowed to foreclose without further action of the bankruptcy court. On April 29, 1981, Mr. Williams moved to dismiss the Chapter 13 proceeding,[3] and the bankruptcy court entered an order granting his motion for voluntary dismissal without prejudice.

The following day, Mr. and Mrs. Williams filed the instant case in the Superior Court of the District of Columbia. They sought to enjoin foreclosure or other enforcement of the promissory note and deed of trust, and money damages for violation of federal and District of Columbia laws,[4] intentional infliction of distress and unconscionability. The next day Gerstenfeld filed a motion in the bankruptcy court for reconsideration of the April 29 dismissal of the Chapter 13 proceeding or entry of protective order, arguing the bankruptcy proceeding should have been converted to an involuntary proceeding and the consent order should control the subsequent litigation in Superior Court. On May 1, 1981, Judge Whelan issued an order that Mr. Williams was precluded from seeking injunctive relief to stop foreclosure as a condition of the dismissal of the Chapter 13 proceedings. On the same date the Superior Court granted a temporary restraining order in the instant case, but subsequently denied a preliminary injunction, on the ground that the Williams' claims were barred by *res judicata* as a result of the bankruptcy court proceedings; the denial was without prejudice to renewal if the bankruptcy court's May 1 order was reversed on appeal.

recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

3. 11 U.S.C. § 1307(b) (1982) provides that upon "a request of the debtor at any time ... the court shall dismiss a case" filed under Chapter 13.

4. The D.C. Consumer Protection Procedures Act, D.C.Code §§ 28–3801, –3818 (1981), the D.C. Notice of Foreclosure Statute, *id.* §§ 45–715(b) (1981), D.C. Usury laws, *id.* §§ 28–3301 *et seq.* (1981), the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (1982), and Regulation Z, 12 C.F.R. Part 226 (1985).

Approximately two weeks later, on the day before the foreclosure sale was to occur, Mr. Williams filed a second Chapter 13 petition in the bankruptcy court. Gerstenfeld foreclosed on July 14, 1981, and purchased the Williams' home. On September 22, 1981, Judge Whelan dismissed the second petition as "filed improvidently." The accompanying order noted that Mr. Williams had taken no action beyond filing the petition, had previously filed a petition requesting the same relief which had been dismissed upon his request, and the April 29 dismissal, as modified on May 1, was pending on appeal to the U.S. District Court for the District of Columbia.

The Williams filed a motion for summary judgment in the instant case following affirmance on appeal of the bankruptcy court's dismissal of the first petition in bankruptcy and after Gerstenfeld had obtained a judgment for possession against them.[5] Their motion challenged the validity of the foreclosure sale on the ground the automatic stay under the Bankruptcy Act prevented foreclosure until the second petition in bankruptcy was dismissed on September 22, 1981. Gerstenfeld responded that the second bankruptcy petition had

been filed in bad faith, solely to prevent foreclosure, and Mr. Williams should not be allowed to use the automatic stay to avoid a sale completed nine months earlier. The court denied the Williams' motion for summary judgment.

Almost two years later, Gerstenfeld filed the motion for summary judgment from which this appeal arises. Attached to the motion was a statement of points and authorities, which included, as required by Super.Ct.Civ.R. 12–I(k), a statement of facts as to which there is no genuine issue. The statement set forth the loan transaction and attendant circumstances, the default and foreclosure, and the bankruptcy court proceedings. The Williams' filed a statement of undisputed facts. *See infra* note 7. The court granted the motion for summary judgment, and the Williams filed this appeal.[6]

## II

When reviewing the propriety of an order granting summary judgment, this court makes an independent review of the record. *Holland v. Hannan*, 456 A.2d 807, 814

---

**5.** Six months after the foreclosure sale, Gerstenfeld filed suit for possession against the Williams in the D.C. Superior Court, and obtained a judgment. Although the Williams challenged the validity of Gerstenfeld's claim to title of the home on the same grounds raised in this appeal, the issue was never litigated. Since appellants had filed a plea of title under Super.Ct. L&T R. 5(c), Gerstenfeld filed a motion for an undertaking. The court granted the motion, appellants failed to post the undertaking, and the plea of title was stricken. *Gerstenfeld v. Williams*, L&T No. 76245–81 (January 21, 1982). Shortly before the affirmance by this court, *Gerstenfeld v. Williams*, No. 82–27 (D.C. April 29, 1982), the Williams filed suit in federal court to enjoin the Superior Court from awarding Gerstenfeld possession of the foreclosed property. The suit was dismissed on the day it was filed, *Williams v. Gerstenfeld*, C.A. No. 82–00326 (D.D.C. February 3, 1982), and the dismissal was affirmed in an appeal that was consolidated with the appeal from the bankruptcy court dismissal. *Williams v. Gerstenfeld*, 702 F.2d 1206 (D.C.Cir.1983). The Williams returned to the District of Columbia Superior Court, and filed a motion in *Gerstenfeld v. Williams, supra,* for relief from the

prior possessory judgment in Superior Court under Super.Ct.Civ.R. 60; the motion was denied, the appeal was dismissed and Gerstenfeld was awarded double costs pursuant to D.C. App.R. 36. *Williams v. Gerstenfeld*, No. 82–1661 (D.C., Order of July 20, 1983).

On December 27, 1983, the Williams filed suit in the Superior Court for possession against the purchasers who had acquired the property from Gerstenfeld, *Williams v. Wilson*, L&T No. 8374483. Gerstenfeld-intervenor's motion for summary judgment was granted, on the ground of *res judicata* since the issue of possession had already been litigated, and affirmed on appeal. *Williams v. Wilson*, No. 84–439 (D.C., Memorandum Opinion and Judgment November 16, 1984).

**6.** Although Mr. and Mrs. Williams noted an appeal, Mr. Williams was dismissed as a party plaintiff in the trial court on the grounds he was precluded under a bankruptcy court order of May 1, 1981, from enjoining foreclosure by Gerstenfeld. The dismissal was without prejudice to Mr. Williams remaining a plaintiff if the bankruptcy court order was reversed on appeal; the order was affirmed.

(D.C.1983); *Scrimgeour v. Magazine,* 429 A.2d 187, 188 (D.C.1981); *Dewey v. Clark,* 86 U.S.App.D.C. 137, 180 F.2d 766 (1950). Thus, the standard of review on appeal is the same as the trial court's standard for initially considering the motion for summary judgment, and we will affirm a grant of summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Holland v. Hannan, supra,* 456 A.2d at 814; *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979); Super.Ct.Civ.R. 56(c). In determining whether an issue of fact exists, the court must examine the pleadings, depositions, and admissions on file, together with any affidavits submitted by the parties. *Holland v. Hannan, supra,* 456 A.2d at 815; *Turner v. American Motors General Corporation,* 392 A.2d 1005, 1006 (D.C. 1978). The moving party has the burden of demonstrating the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law. *Holland v. Hannan, supra,* 456 A.2d at 815. The party opposing summary judgment is entitled to the benefit of all favorable inferences that can be drawn from the evidence. *Holland v. Hannan, supra,* 456 A.2d at 815; *Yasuna v. Miller,* 399 A.2d 68, 71 (D.C.1979); *Turner v. American Motors General Corporation, supra,* 392 A.2d at 1006.

### A.

In response to Gerstenfeld's motion for summary judgment, the Williams filed a "Statement of Material Facts Not in Dispute."[7] Presumably they sought to oppose the motion and Rule 12–I(k) statement by alleging the existence of a material factual dispute for trial. However, their statement of facts was not supported by record references or affidavits. Super.Ct. Civ.R. 12–I(k) provides:

> [T]he court may assume that facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are asserted to be actually in good faith controverted in a statement filed in opposition to the motion. Any statement filed pursuant to this section of this Rule shall include therein references to the parts of the record relied on to support such statement and shall be a part of the record.

■ Further, Super.Ct.Civ.R. 56(e) provides "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." The failure of a party opposing summary judgment to provide supported contentions of a factual dispute will result in the court's acceptance of a movant's statement of facts as undisputed absent clear support for any such contention from the record. *See, e.g., Lynch v. Meridian Hill Studio Apts., Inc.,* 491 A.2d 515, 521 (D.C.1985) (citing *Milton Properties, Inc. v. Newby,* 456 A.2d 349, 354 (D.C.1983)); *Bennett v. Kiggins,* 377 A.2d 57, 59–60 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782

---

**7.** The Williams' statement of material facts not in dispute read:

1. Currently and at all relevant times, the bare legal title to the property in question is vested in Perpetual American Bank, or its predecessors.
2. The interest on the alleged loan was 49%.
3. Mr. Williams and Mr. Gerstenfeld agreed to call the loan a business loan so that they could get around the D.C. Usury laws. At all relevant times Mr. Gerstenfeld knew or should have known that the purpose of the loan was to prevent foreclosure on his home by Mr. Nash and Mr. Palmer.

4. Mr. Gerstenfeld materially breached his agreement by placing the loan in default two months after inception, thereby proximatedly [*sic*] causing Mr. Williams great stress which lead [*sic*] to the loss of his kidney functions.
5. After the alleged foreclosure, there was no settlement, and the first deed of trust was never retired.
6. Perpetual American was never notified of the foreclosure sale.
7. Equitable title in the property still resides in Mr. Williams.
8. Further facts cannot be developed until answers to interrogatories due June 29, 1984 are filed.

(1978) (particularly in cases in which a party is alleging fraud, a party must allege all facts which will enable the court to draw an inference of fraud and "allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient," for purposes of Rule 12–I(k) and 56(e)); *Dillard v. Travelers Insurance Co.,* 298 A.2d 222, 223–4 (D.C.1972) (assertion by way of legal conclusions without supporting factual assertions were insufficient to allege the existence of a material fact; "no disputed facts appear from the unverified complaint or by contravening affidavit"); *Kron v. Young & Simon, Inc.,* 265 A.2d 293, 295 (D.C.1970) ("statement that Young assured Kron that it would in some manner resolve the problem" without any reference to the record led the court to conclude upon review of the record that this statement "fails to persuade us that there exists a well-pleaded issue of fact ... requiring trial").

Upon review of the Williams' statement of "facts not in dispute," we hold they have failed to meet their burden under Rule 56(e). Their "fact" assertions are either not established in the record or constitute a legal conclusion to be made by the court and not a statement of fact. Therefore, because the Williams failed to raise a disputed issue of material fact, the only remaining issue is whether Gerstenfeld was entitled to judgment as a matter of law.

### B.

■ The Williams contend the foreclosure sale was invalid because it was stayed upon the filing of the second bankruptcy petition, and alternatively, if the sale was valid, they are entitled to damages for loss of their home.[8] These contentions involving the foreclosure sale were not addressed in their complaint or response to Gerstenfeld's motion for summary judgment. As a general rule, matters not properly presented to a trial court will not be

resolved on appeal. *Chase v. Gilbert,* 499 A.2d 1203, 1209 (D.C.1985); *Brown v. Collins,* 131 U.S.App.D.C. 68, 402 F.2d 209 (1968); *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–70, 371, 384 F.2d 319, 320–21, 323 (1967) (a court will not allow an exemption "to afford a defeated litigant another day in court because he thinks that if he were given the opportunity to try his case again upon a different theory he might prevail"). *Calhoun v. Freeman,* 114 U.S.App.D.C. 385, 387, 316 F.2d 386, 388 (D.C.Cir.1963). A court deviates from this principle only in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record. *Miller v. Avirom, supra,* 127 U.S.App.D.C. at 371, 384 F.2d at 322–23; *In re Elmore,* 127 U.S. App. D.C. 176, 382 F.2d 125 (1967).

However, the Williams asserted in their motion for summary judgment that the second bankruptcy petition prevented the foreclosure sale. Gerstenfeld did not dispute their right to raise this issue in his opposition to their motion. On appeal he maintains this issue is not properly before the court, but has not claimed any surprise or prejudice, and we find none. Accordingly, since the Williams raised the issue in the trial court, Gerstenfeld had an opportunity to oppose, and the trial court ruled, we deem it appropriate under the circumstances, and in the interests of judicial economy in resolving the parties' lingering dispute, to address the effect of the filing of the second petition in bankruptcy.

■■ The Williams agreed in the March 16 consent order to repay the loan by May 1, 1981, or to allow foreclosure. Instead of paying, Mr. Williams obtained a dismissal of the bankruptcy proceeding, and immediately attempted to enjoin foreclosure in another forum. Such an attempt was expressly prohibited by the consent order, and would be permissible only if the consent order ceased to have vitality after the dismissal of the bankruptcy proceedings.

---

**8.** The Williams' contention that the second deed of trust did not transfer legal title to Gerstenfeld is meritless. On the record before us Gersten-feld has never claimed he obtained by foreclosure on the second deed of trust title greater than that held by the Williams.

Gerstenfeld's motion for reconsideration or a protective order sought to ascertain whether the consent order continued to preclude foreclosure. The bankruptcy court ruled it did, and modified the consent order of dismissal to condition it on Mr. Williams' agreement to abide by the terms of the consent order not to attempt to stop foreclosure. Since the bankruptcy court acted within its authority in so modifying the consent order,[9] a subsequent Chapter 13 petition could not affect the parties' obligations under the consent order. "The automatic stay which is issued when initiating a new case may not be used to abuse or thwart prior proper orders of the Court in a prior case," and where a stay has been terminated to permit foreclosure, a new stay would not be allowed in a subsequent Chapter 13 proceeding "absent demonstration of change of conditions of the debtor's financial resources and ability to fund a plan." *Matter of McKanders,* 42 B.R. 108, 109 (N.D.Ga.1984). The Williams have made no such showing. The bankruptcy court expressly stated in *McKanders* that if the debtor chose to obtain a voluntary dismissal of the Chapter 13 proceeding, its order "in this adversary proceeding shall continue to be effective as to this debtor, creditor and real property." *Id.* at 110.

But even if the consent order had no effect under the Bankruptcy Act after May 1, the automatic stay afforded a debtor who files a petition in bankruptcy would not be effective if the petition is filed in bad faith. The bankruptcy court has held that the filing of successive petitions with the clear intent of forestalling a creditor's foreclosure action constitutes bad faith. *Matter of McKanders, supra; In re Lunsford,* 39 B.R. 490 (N.D.Ga.1984), and *Matter of Gates,* 42 B.R. 4 (N.D.Ga.1983). In *Gates,* the bankruptcy court reviewed facts nearly identical to the instant case. There, the debtors filed a Chapter 13 petition which stayed a foreclosure sale. At the time of the filing, the debtors were six

months in arrears on the mortgage debt. The Chapter 13 petition was dismissed for failure to file all documents required to complete the debtor's petition. The mortgagee set a date for foreclosure thirty days after the dismissal. Immediately preceding the foreclosure date, the debtors filed a second Chapter 13 petition. The court dismissed the petition for the same reason as the first dismissal. The foreclosure was rescheduled, and the debtors filed a third Chapter 13 petition, which stopped the foreclosure. The bankruptcy court held:

> in view of the prior history of the debtor showing an inability to perform under a Chapter 13 plan and to pay this mortgage creditor on debtors' principal residence the post-petition monthly payments as they became due, it shall be presumed that a dismissal of this Chapter 13 case by the debtor before the date of foreclosure and an immediate filing of another petition prior to foreclosure date would be for the sole purpose of obtaining an automatic stay and thwarting foreclosure and not for the good faith purpose of filing of a plan....

*Id.* at 6. In *Lunsford, supra,* 39 B.R. at 491, successive petitions were pending before the bankruptcy court at the same time, and the court held its prior order granting relief from the stay was *res judicata* between the parties.

Mr. Williams filed a Chapter 13 petition, then agreed to the terms of a consent order to resolve the disputed debt, and thereafter requested dismissal of the petition. Contrary to the consent order, he and Mrs. Williams filed a lawsuit to stop the foreclosure sale. When they failed to prevail in the second forum, Mr. Williams sought to invoke a second automatic stay in bankruptcy the day before the foreclosure sale, but took no other action. The unavoidable inference to be drawn from these undisputed facts is that the second Chapter 13 petition was filed in bad faith for the sole purpose of attempting to delay a fore-

---

**9.** The bankruptcy court is empowered to "issue any order, process, or judgment that is neces-

sary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (1982).

closure which the courts in both forums had ruled would be allowed. This conclusion is supported by the bankruptcy trustee's refusal to confirm Mr. Williams' proposed Chapter 13 plan because it appeared to be filed in bad faith.[10]

Accordingly, we hold the bankruptcy court consent order of March 16, 1981, governed the parties' obligations after the voluntary dismissal of the Chapter 13 proceeding on April 29, 1981, as modified May 1, 1981, and the second Chapter 13 petition did not affect these obligations. Hence, the foreclosure sale did not violate the automatic stay provision of the Bankruptcy Act, 11 U.S.C. § 362.

### C.

The Williams also maintain they are entitled to damages for the loss of their home even if the foreclosure sale was valid. We hold their claims are barred by *res judicata.*

■ The doctrine of *res judicata* operates as a complete bar to the relitigation of claims between the same parties or those in privity with them after the rendering of a valid, final judgment on the merits in a prior suit. *Adams v. Jonathan Woodner Co.,* 475 A.2d 393, 396 (D.C.1984); *Henderson v. Snider Bros., Inc.,* 439 A.2d 481, 482 (D.C.1981); *Thornton v. Little Sisters of the Poor,* 380 A.2d 593, 595 (D.C.1977); *I.A.M. National Pension Fund v. Industrial Gear Manufacturing,* 232 U.S.App. D.C. 418, 723 F.2d 944, 946–47 (1983). It bars not only those claims which were actually litigated in the prior proceeding, but also those claims which could have been presented. *Id.* The ordinary principles of *res judicata* are applicable to bankruptcy decrees. *Stoll v. Gottlieb,* 305 U.S. 165,

170, 59 S.Ct. 134, 136, 83 L.Ed. 104 (1938). It is irrelevant that the nature of the two proceedings is different; as long as the parties are the same, and the essence of the claim and evidence necessary to establish it are the same, *res judicata* applies. *Henderson v. Snider Bros., supra,* 439 A.2d at 484. Consent decrees generally are treated as final judgments on the merits and accorded *res judicata* effect. *I.A.M. National Pension Fund v. Industrial Gear Manufacturing, supra,* 232 U.S.App.D.C. at 421, 723 F.2d at 947 (if court has made determinations of fact and conclusions of law, application of *res judicata* to consent decrees makes efficient use of judicial energy devoted to individual cases, establishes certainty and respect for court judgments and protects party relying on prior adjudication from vexatious litigation).

■ Both parties submitted pleadings to the bankruptcy court when Mr. Williams' first Chapter 13 petition was pending. The court scheduled a hearing and a trial, and eventually ordered Mr. Williams to pay the entire debt by May 1, 1981, or face foreclosure. Thus, the issue of the Williams' indebtedness had been submitted to the bankruptcy court for determination and could have been litigated by proceeding to a hearing on Gerstenfeld's complaint to modify the automatic stay, and to trial. This is apparent from the fact Mr. Williams had raised the defense of unconscionability in his answer to Gerstenfeld's complaint; he also disputed the debt in a statement accompanying the proposed Chapter 13 plan. Further, Judge Whelan's May 1 order recited the preclusive effect of the dismissal. Since Mr. Williams failed to take appropriate steps toward reorganization

---

**10.** The trustee appointed by the bankruptcy court objected to confirmation of the proposed Chapter 13 plan filed by Mr. Williams on March 6, 1981 in the first bankruptcy proceedings, reasoning in part:

> It appears that the debtor's sole purpose in filing the petition under Chapter 13 was to stay foreclosure proceedings by Roger Gerstenfeld.

> WHEREFORE the plan proposed is in bad faith, is not in the best interest of the creditors, is not feasible and your trustee therefore objects to confirmation.

*In Re Arthur Williams,* No. 81–0017, *supra,* (April 24, 1981).

under the Bankruptcy Act after the first petition was dismissed, the dismissal "without prejudice" of that petition provides no support for the Williams' contention on appeal that the May 1 order did not preclude relitigating Gerstenfeld's right to foreclose. In addition, Mr. Williams litigated the issue of indebtedness in appealing the bankruptcy court's consent order of dismissal in federal court, where he argued the order ceased to have vitality when the Chapter 13 proceedings were voluntarily dismissed and was not a final judgment on the merits.[11]

Finally, the Williams contend that Mrs. Williams is not precluded from litigating the validity of the debt to Gerstenfeld because she was not a party to the bankruptcy petitions. This is contrary to long-standing law in this jurisdiction. Where a prior adjudication involves a spouse who owns property as a tenant by the entireties with the other spouse, and the dispute concerns the property so owned, the prior judgment against one spouse is binding on both spouses in any later proceeding. *Zoby v. Kosmadakes*, 61 A.2d 618, 621–22 (D.C.Mun.App.1948); *Sandler v. Wertlieb*, 60 A.2d 222, 223 (D.C.Mun.App.1948); *David v. Nemerofsky*, 41 A.2d 838, 840 (D.C.Mun.App.1945); D.C.Code § 45–216 (1981). Further, even in the absence of this binding authority, Mrs. Williams is precluded from litigating the validity of the debt by principles of estoppel; she failed to seek relief in the bankruptcy court from its May 1, 1981, order,[12] and did not appeal the denial of the preliminary injunction in the instant case. *Cullinane v. Potomac Electric Power Co.*, 147 A.2d 768, 771 (D.C. Mun.App.1959) (negligent failure to exercise rights will result in estoppel). Nothing

in the record suggests, as the Williams' urge on appeal, that Mrs. Williams was the innocent dupe of her husband.[13]

Accordingly, the judgment is affirmed.

---

**11.** The U.S. District Court affirmed the bankruptcy court's dismissal on the ground Mr. Williams had failed to show the judge's exercise of discretion was clearly erroneous. *Gerstenfeld v. Williams, supra* note 5; its decision was affirmed by order on appeal. *Williams v. Gerstenfeld, supra* note 5.

**12.** *See* Bankruptcy Rule 7019, regarding joinder of indispensable or interested parties.

**13.** The record reveals Mrs. Williams was a knowledgeable and active participant in the decision to obtain a loan from Gerstenfeld. She was an administrative secretary, had been a social worker, and helped Mr. Williams purchase their residence. The record is replete with instances in which she signed her name on notarized documents, and she testified in her deposition that she had either read the documents or had the opportunity to read them.