**PORTER NOVELLI, INC.,**
Appellant/Cross–
Appellee,

v.

**Howard BENDER, General Partner for Jack I. Bender & Sons, Appellee/Cross–Appellant.**

**Howard Bender, general partner for jack I. Bender & Sons, Appellant/Cross–Appellee,**

v.

**Porter Novelli, Inc., Appellee/Cross–Appellant.**

No. 00–CV–822, 00–CV–842, 02–CV–87.

District of Columbia Court of Appeals.

Argued Jan. 8, 2003.
Decided Feb. 20, 2003.

---

Richard W. Luchs, Washington, DC, for appellant/cross-appellee.

Andrew J. Kline, Washington, DC, with whom J. Vaughan Branch was on the brief, for appellee/cross-appellant.

Before TERRY and FARRELL, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

In this dispute between Bender (a landlord) and Porter Novelli (a commercial subtenant), the central question is whether the subtenant—in holding over for more than four months after the lease (and sublease) expired at the end of December 1999—is liable to the landlord for double or triple rent during the holdover period.

## I.

Landlord filed an action for possession and motion for summary judgment in the landlord-tenant court, which stayed eviction and issued a protective order obliging subtenant to pay double rent into the court registry—reflecting the holdover penalty prescribed in the lease—pending resolution of the matter. Subtenant then offered to consent to judgment of possession at double rent if landlord consented to a stay until May 15, 2000. Landlord countered, among other things, with an offer of the requested stay at triple rent. Subtenant agreed, and the parties, after reciting in court the general terms of their agreement, entered a consent judgment—conditioned, however, on reduction of the agreement to a signed written document.

Negotiations broke down; no written agreement was executed. Subtenant moved to pay triple rent (and other sums)

into the court registry while remaining in possession pending final outcome. Landlord, to the contrary, moved for vacation of the stay of eviction, for entry of its unopposed motion for summary judgment, and thus for immediate possession. Concluding that the parties had not finalized the oral holdover agreement, as required under the consent judgment, a second landlord-tenant judge granted landlord's motion and entered a judgment for possession, implicitly incorporating the lease's award of double rent during holdover.

Subtenant immediately filed an appeal in this court, premised on the validity of the triple-rent holdover agreement, and sought an emergency stay, which this court granted. Our order, more specifically, required payment of triple rent—plus a $12,000 attorney's fee and a $400,000 security deposit to assure vacation of the premises by May 15—into the trial court registry pending resolution of the appeal.

In March 2000, landlord—presumably anticipating that the appeal process would thwart its efforts for early repossession, and thus hoping for the triple rent the subtenant had offered—moved to dismiss the appeal as moot, conceding enforceability of the holdover agreement. Subtenant opposed on the ground that it then would be exposed to an unconditional judgment of possession upon lifting of this court's stay. In April, this court denied landlord's motion without prejudice to the parties' filing a "fully executed settlement agreement addressing all issues, including the status of liquidated damages pending [Subtenant's] vacating the premises on May 15, 2000."

Subtenant left the premises by May 8, 2000, whereupon it moved to dismiss the appeal as moot. Landlord did not oppose, and this court granted subtenant's motion.

Both parties then returned to landlord-tenant court and moved for release of funds in the court registry. In doing so Landlord—having prevailed initially on the ground that the lease, not the contested holdover agreement, governed the dispute—now claimed that Subtenant had been right after all, and thus that subtenant owed triple, not double, rent for the holdover period. Subtenant, to the contrary—having premised its appeal and request for stay on the validity of the holdover agreement—now claimed that Landlord had been right after all, and thus that the only law of the case, adjudicated in landlord-tenant court by reference to the lease, required double, not triple, rent. After a hearing, a third landlord-tenant judge, agreeing with subtenant that the law of the case (announced by the previous judge) was premised on rejection of the holdover agreement, awarded landlord the double rent due under the lease.

In this second appeal subtenant, in support of the landlord-tenant court ruling, argues that landlord not only is bound by the law of the case—which landlord itself helped establish—but also cannot claim prejudice from receipt of the double rent due under a lease that landlord had signed and accepted. Landlord, on the other hand, notes that the law of the case was twofold, embracing landlord's right to both immediate possession and double rent during holdover; that subtenant trumped that dual right by obtaining a stay in this court premised on landlord's entitlement to triple rent under an agreement forestalling possession; that landlord otherwise could have taken over the premises as it desired (and the judge had ordered) well before May 8, 2000; and thus that subtenant, having received the benefit of a stay the landlord-tenant court itself rejected, is estopped to deny landlord's right to triple rent as the price for its representation to this court that led to the stay of eviction

until subtenant was ready to vacate the premises.

So which law of the case governs—the real-world impact of this court's stay (frustrating landlord's dual right to immediate occupancy and double rent) premised on subtenant's initial representation that the holdover agreement for triple rent was valid? Or the trial court's award of double rent based on landlord's initial premise, in obtaining the order for possession, that the lease not the holdover agreement governed?

## II.

■ Landlord prevails here. The equities reflected in the foregoing statement of facts and proceedings—as summarized in landlord's position two paragraphs above—estop subtenant from relying on the lease terms that subtenant expressly rejected in obtaining this court's aid, at the price of triple rent, in holding over until May 2000 rather than yielding immediate possession as the landlord-tenant judge had ordered.

Because subtenant switched legal positions in two related judicial proceedings, taking one side of an issue at trial and saying the opposite on appeal, the technical doctrine we apply is "judicial estoppel." *See Plough Inc. v. National Acad. of Sciences*, 530 A.2d 1152, 1159 n. 10 (D.C. 1987). Our colleague, Judge Schwelb, has nicely expressed in another case the principle that guides us here: "The independent doctrine of judicial estoppel precludes a litigant from playing fast and loose with a court of justice by changing his position according to the vicissitudes of self interest . . . ." *Lofchie v. Washington Square Ltd. Partnership*, 580 A.2d 665, 668 (D.C. 1990) (concurring opinion); *see also Lassiter v. District of Columbia*, 447 A.2d 456, 461 (D.C.1982) (appellant judicially estopped to proffer new facts contrary to his prior testimony in earlier proceeding).

■ The broader doctrine of "equitable estoppel," which we recently have applied rather than judicial estoppel in reviewing related judicial proceedings, will also apply here to bar subtenant's attack on triple rent. Subtenant acknowledged to this court that it was obliged to pay that much if we ordered a stay of immediate eviction. We did so. A " 'party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation *or order* may not subsequently take an inconsistent position to avoid the corresponding obligations or effects.' " *Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1212 (D.C. 2002) (quoting *First American Discount Corp. v. Commodity Futures Trading Comm'n*, 343 U.S.App. D.C. 71, 79, 222 F.3d 1008, 1016 (2000)) (emphasis added).

## III.

Three other lesser issues are presented.

■ 1. Subtenant left the premises on May 8. The landlord-tenant court upon remand after dismissal of the first appeal awarded landlord rent—albeit only double rent—for the entire month of May. On this second appeal, subtenant contends that it owes no rent for May because landlord withheld use of the freight elevator that would have permitted subtenant to leave by the end of April. Landlord, to the contrary, disputes the freight-elevator allegations and cites the lease for the proposition that a tenant who holds over into a month is responsible for the entire month's rent—especially here, it adds, because landlord was unable to re-let the premises until June.

We take a middle ground. This court stayed subtenant's eviction until May 15, 2000 and at subtenant's request ordered the first appeal dismissed on May 18. Thus, landlord, at best, was in a position to

re-let the premises for a period beginning no earlier than May 16. On the other hand, landlord had notified subtenant as early as April 7, 2000 that it had entered into a lease for the premises with a new tenant, LeapSource, Inc., and in any event landlord was aware by the end of March that subtenant was intending to move by mid-May at the latest and hopefully earlier. Landlord's very premise on this appeal, as represented at oral argument, is "quasi-contract," not an effort to enforce the underlying lease. All things considered, therefore, landlord equitably is entitled to rent—triple rent—for the period ending May 15, 2000, not later.

2. Next, landlord's tenant—URS Greiner Woodward–Clyde, Inc. (not a party to this appeal)—forfeited a $21,308.38 security deposit to landlord upon subtenant's failure to vacate the premises when the lease expired. Subtenant claims a credit from landlord for this amount. We cannot agree. Subtenant is not in privity with the lease between landlord and URS; landlord was entitled to the forfeited deposit that its tenant, not subtenant, had agreed to pay. Indeed, the only record evidence implicating subtenant and URS's security deposit is a paragraph of the sublease providing that subtenant indemnify URS against loss resulting from "failure to timely surrender the demised premises" (an issue on which we express no opinion). Nor, finally, has subtenant previously argued in landlord-tenant court, or before this court on motion for stay, that URS's security deposit was germane to this landlord-subtenant dispute. To the contrary, subtenant told the first landlord-tenant judge to hear this matter that the "triple rent agreement is going to be without prejudice to the landlord's right to retain URS's security deposit under the prime lease as this deal is directly between the sub-tenant and the landlord." We perceive no equity here favoring subtenant.

3. On January 7, 2002, the landlord-tenant court awarded Landlord $28,066.97 in attorney's fees, which landlord's counsel has conceded at oral argument on appeal should be credited back to subtenant in the event landlord prevailed on the double versus triple rent issue.

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*