John A. FAIRMAN, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 02–CV–650.

District of Columbia Court of Appeals.

Argued April 14, 2004.
Decided Oct. 25, 2007.

Frederick D. Cooke, Jr., Washington, DC, for appellant.

Michael F. Wasserman, Assistant Corporation Counsel, with whom Robert J. Spagnoletti, Corporation Counsel at the time the brief was filed, and Edward E. Schwab, Acting Deputy Corporation Counsel at the time the brief was filed, were on the brief, for appellee.*

Before WAGNER, NEBEKER and STEADMAN, Senior Judges.**

WAGNER, Senior Judge:

Appellant, John A. Fairman, appeals from an order of the trial court granting the application of appellee, District of Columbia (District), to vacate an arbitration award and denying Fairman's motion to dismiss the District's application. The arbitrator had determined that Fairman was entitled to severance pay in accordance with the terms of amendments to his employment agreement with the District of Columbia Health and Hospitals Public Benefit Corporation (PBC).[1] Consistent with the District's argument, the trial court concluded that enforcement of the amended agreement would violate a well-defined and dominant public policy in that the amended agreement had not been approved by the Financial Responsibility and Management Assistance Authority (Control Board). On appeal, Fairman challenges that determination. The District now concedes that the contract amendment was not subject to Control Board

---

* On May 26, 2004, the Office of the Corporation Counsel of the District of Columbia was renamed the Office of the Attorney General of the District of Columbia. *See* Mayor's Order 2004–92, 51 D.C.Reg. 6052 (2004).

** At the time of argument, Judge Wagner was Chief Judge of the court, and Judge Steadman was an Associate Judge.

1. The District of Columbia Council created the PBC to oversee the District's public health care facilities and hospitals. *See* D.C.Code §§ 32–261.1, *et seq.* (1997).

review and that the public policy upon which the trial court relied in vacating the award "is not of the clearest nature." Therefore, the District urges this court to affirm on other grounds discussed hereinafter. We conclude on alternate grounds that Fairman is not entitled to severance pay under the amendments to his employment contract, but that he is entitled to severance pay under his original contract. Therefore, we remand the case to the trial court for further proceedings consistent with this opinion.

## I.

## Factual Background

Fairman and the PBC entered into a contract on October 1, 1997 under the terms of which Fairman was appointed the General Manager and Chief Executive Officer (CEO) of the PBC. His original term of service was to be from October 1, 1997 to September 31, 1999. The contract, as finally approved by the Control Board, had a severance provision which entitled Fairman upon termination to "six months salary and all benefits at the level in effect at the time of severance." The contract also provided "[t]hat the PBC and Fairman agree that any dispute arising under this agreement which cannot be resolved amicably shall be resolved through arbitration under rules of the American Arbitration Association."

In April 1999, Fairman and the PBC executed amendments to the original agreement, which set Fairman's term of employment at five (5) years commencing

from October 1, 1998 and increased his base salary to $175,000 per year. The severance provision was amended to entitle Fairman upon termination to "all salary and benefits due and owing under the remaining terms of [the] agreement . . . . and [i]n no case . . . to less than one year's salary and all benefits . . . . at the level in effect at the time of severance."

In June 2000, the PBC terminated Fairman's employment, and Fairman sought termination pay under the terms of the modified agreement. The PBC rejected Fairman's demand, and Fairman requested arbitration to which the District submitted without objection. During the arbitration proceedings, the District raised as an issue whether the 1999 amendments had ever been presented for review to the Control Board. After extensive hearings, on July 27, 2001, the arbitrator entered an award to Fairman in the amount of $662,925 based on the contract as amended.[2]

The District filed a petition to vacate the arbitration award in the Superior Court, contending that the award violated public policy "by purporting to enforce illegal and void modifications to the [1997] Agreement," in that the "proposed [1999] modifications [had] not [been] submitted to the Control Board." The District contended that "the only authorized expenditure for a severance payment to [Fairman] is the six-month severance provision contained in his unmodified [1997] employment agreement," and it represented in one of its filings with the court that it was prepared "to make a payment of any amount owed under this [1997] agreement."

2. In her findings, the arbitrator stated in pertinent part:

The Amendments to the Employment Agreement, between Claimant ("John A. Fairman") and Respondent ("District of Columbia Health and Hospitals Public Benefit Corporation"), executed in April, 1999, are binding on the parties and are enforceable.

The Chair and Vice Chair of the Board of Directors executed such Amendments on behalf of the Respondent. Salary increase, housing allowance, and automobile allowance provisions, set forth in such Amendments, were in fact implemented by officials of the Respondent.

Fairman filed a motion to dismiss the District's petition, contending that the District had not alleged a statutory basis for vacating the arbitration award. The trial court denied Fairman's motion and stated as its reason that if the arbitrator exceeded her powers as alleged, there would be a valid statutory reason for vacating the award. On the merits of the District's petition, the trial court noted that an arbitration award that violates public policy cannot stand. The court concluded that this public policy exception is applicable in this case because:

> It is clear that the Control Board was required to approve the respondent's amended employment contract in order for it to be enforceable, pursuant to D.C.Code § 47–392.03(b) (2001). The 1999 amended employment agreement was never submitted to the Control Board. Any award requiring the government to pay on the unapproved amended employment agreement contravenes a District of Columbia statutory provision. Indeed, any person attempting to enforce the award would be committing an illegal act ... Therefore, there is a well defined and dominant public policy that is violated if the agreement is enforced.

The trial court further concluded that, given this strong public policy, it was not necessary to consider whether the arbitrator had based her award on equitable estoppel grounds.[3] For these reasons, the trial court granted the District's petition, and this appeal followed.

## II.

### Generally Applicable Legal Principles

■ "[J]udicial review of arbitration awards is limited." *Laszlo N. Tauber,*

*M.D. & Assocs. v. Trammell Crow Real Estate Servs.,* 738 A.2d 1214, 1217 (D.C. 1999) (citing *Shaff v. Skahill,* 617 A.2d 960, 963 (D.C.1992)). Our review of the confirmation or the vacation of an arbitration award is *de novo. See id.* at 1216. "Arbitration in the District of Columbia is governed by the District of Columbia Uniform Arbitration Act, D.C.Code §§ 16–4301 to – 4319 [ (1997) ]." *See Shaff,* 617 A.2d at 962. Section 16–4311 of that Act limits the permissible grounds for vacating an arbitration award. *See Tauber,* 738 A.2d at 1217. "Where ... a party has not sought to vacate an arbitrator's award on statutorily-recognized grounds pursuant to D.C.Code § 16–4311 ... courts cannot set aside such awards for errors of law or fact made by the arbitrator." *Shaff,* 617 A.2d at 963. One of the statutory grounds for vacating an arbitration award is that the arbitrator has exceeded his or her authority. *See* D.C.Code § 16–4311(a)(3) (1997). "In reviewing whether an arbitrator has exceeded his powers pursuant to § 16– 4311(a)(3), we do not review [the] arbitration award on the merits." *Tauber,* 738 A.2d at 1217 (quoting *Poire v. Kaplan,* 491 A.2d 529, 534 (D.C.1985) (further citations omitted and internal quotations omitted)). "If an arbitrator 'rules only on matters within the scope of the governing arbitration clauses, he [will] not exceed his authority....'" *Id.* (citing *Poire,* 491 A.2d at 533–34) (footnote omitted).

■ An exception has been recognized to the requirement that an arbitration award can be vacated only on statutory grounds. "It is well settled that an arbitration award may not stand if it contravenes paramount considerations of pub-

---

**3.** One of the District's arguments was that the arbitrator exceeded her powers by deciding the case on equitable estoppel grounds in that a portion of the contract had already been performed.

lic policy." *Lopata v. Coyne,* 735 A.2d 931, 938 (D.C.1999) (quoting *City of DeKalb v. International Ass'n of Fire Fighters, Local 1236,* 182 Ill.App.3d 367, 131 Ill.Dec. 492, 538 N.E.2d 867, 870 (1989)). "The refusal to enforce the arbitrator's decision on public policy grounds requires 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)) (further citations omitted).

### III.

Fairman argues that the trial court erred in ruling (1) that the arbitrator exceeded her powers as the term is defined in D.C.Code § 16–4311(a)(3), and (2) that the arbitration award is in violation of public policy. In response, the District acknowledges that the public policy grounds, upon which the trial court relied at the District's urging, were incorrect. Specifically, the District concedes that when Fairman and the PBC agreed to the contract modifications, they were, in fact, not subject to review by the Control Board.[4] Therefore, the District argues for affirmance on other grounds, set forth herein, which were not raised before the arbitrator or in the trial court.

### A. Challenge to the 1997 Agreement and Arbitration Provision

The District argues that the PBC had no authority to include an arbitration provision in its contract. It contends that the whole contract under which Fairman claimed was void and unenforceable. Fair-

man argues in response that the District never challenged in the trial court the validity of the 1997 employment agreement, which contained the arbitration clause, or the arbitrability of the dispute. He contends that the District's position on appeal is inconsistent with the position that it took in the trial court, and therefore, barred by principles of judicial and equitable estoppel. He also argues that the District waived such arguments by not asserting them in the trial court.

 The doctrine of judicial estoppel precludes a party from taking one position on an issue in the trial court and the opposite position on appeal. *Porter Novelli, Inc. v. Bender,* 817 A.2d 185, 188 (D.C. 2003) (citing *Plough Inc. v. National Acad. of Sciences,* 530 A.2d 1152, 1159 n. 10 (D.C.1987)). In *Porter Novelli,* this court applied the doctrine and held that a commercial tenant was estopped from denying the validity of a holdover agreement where it had secured a stay on appeal premised upon the claim that the landlord was entitled to triple rent under the agreement. *Id.* at 187–88. Judicial estoppel is part of the broader doctrine of equitable estoppel. *See id.* at 188. The equitable estoppel doctrine provides that "'a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects.'" *Thoubboron v. Ford Motor Co.,* 809 A.2d 1204, 1212 (D.C.2002) (quoting *First Am. Disc. Corp. v. Commodity Futures Trading Comm'n,* 343 U.S.App. D.C. 71, 79, 222 F.3d 1008, 1016 (2000)) (other citation omitted).

---

4. According to the District, the Control Board had narrowed substantially the criteria for contracts subject to its review, and the con-

tract did not meet the requirements for review.

■ We agree with Fairman's arguments that application of either doctrine precludes the District from taking the position on appeal, contrary to its position in the trial court, that the 1997 agreement and the provision for arbitration are void. Not only did the District not challenge the validity of the 1997 agreement or its arbitration provision, but also it affirmatively asserted that the 1997 agreement was valid, when it sought to have the award, which was based on the 1999 amendment, vacated.[5] Indeed, the District represented to the trial court that if it granted its petition to vacate the award, the District stood ready "to make payment in any amount owed under this [1997] agreement." Moreover, the District participated in lengthy arbitration proceedings without claiming that the contract was void and that the PBC could not enter a contract containing an arbitration provision.[6] It could have, but did not seek a stay to challenge the validity of the agreement to arbitrate. *See* D.C.Code § 16–4302(b) (2001) (providing that "[o]n application, the Court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate"). "[A] party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Lopata, supra,* 735 A.2d at 937 (quoting *Nghiem v. NEC Electronic, Inc.,* 25 F.3d 1437, 1440 (9th Cir.), *cert. denied,* 513 U.S. 1044, 115 S.Ct. 638, 130 L.Ed.2d 544 (1994) (other citation and internal quotation marks omitted)). Participation in the arbitration proceeding without objection waives any claim that the award is void because there was no agreement to arbitrate. *Lopata,* 735 A.2d at 937 (citing *Jaffe v. Nocera,* 493 A.2d 1003, 1010 (D.C.1985)). The District's first challenge to the 1997 contract and the arbitration provision came well after the arbitrator had made a substantial award to Fairman based on the contract amendments. This challenge arose only after the parties had expended considerable time and resources in the arbitration proceeding and in the trial court during which the District accepted the validity of the 1997 contract and the arbitrability of the dispute under it.[7] For the first time on appeal (and only after the District realized

---

5. In support of its petition to vacate the arbitrator's award, the District stated the following:

 At issue in this case is under which of two severance packages does [Fairman] receive severance and other payments. [The District] contends that [Fairman] is entitled to receive payments under an employment agreement dated October 1, 1997.... *This agreement was approved by the District of Columbia Financial Responsibility and Management Assistance Authority ("Control Board") and is valid.* (emphasis added). By contrast, [Fairman] contends that he is entitled to severance pay and other payments under a series of purported amendments dated April 8, 1999 to the employment agreement.

6. At the time relevant to this controversy, the PBC had authority to "make and execute contracts ... necessary and appropriate for the exercise of the powers and fulfillment of its corporate purposes." D.C.Code § 32–262.5(f) (1997). It also had the power to "employ officers, executives, and management personnel ... [and to] prescribe their duties and terms of employment, compensation, and benefits...." D.C.Code § 32–262.5(m) (1997). We have found no express provision, and the District has cited none, precluding the PBC from entering a contract containing a provision for arbitration. The District seeks to distill this prohibition from other statutory authority. In light of our disposition, we need not address this argument.

7. According to Fairman, the arbitration proceedings involved seven days of witness testimony, and the parties filed pre-hearing and post hearing briefs. In the trial court, in support of its motion to vacate the award, the District filed a supporting memorandum, a reply brief and a supplemental brief, none of which challenged the 1997 agreement or the arbitration provision.

that it would have to concede the flaw in the position that the trial court accepted at its urging) did the District switch positions and claim that the original contract under which the matter was arbitrated was void. The doctrine of judicial estoppel precludes a party from switching legal positions in this manner " 'according to the vicissitudes of self interest. . . . ' " *Porter Novelli, supra*, 817 A.2d at 188 (quoting *Lofchie v. Washington Square Ltd. P'ship*, 580 A.2d 665, 668 (D.C.1990) (concurring opinion)). Therefore, we reject the District's arguments that the 1997 contract and the arbitration clause are illegal and unenforceable.[8]

### B. Public Policy Challenge to the 1999 Contract Amendments

The District argues that the 1999 amendment on which Fairman's claim is based is void because: (1) the amendments were acted upon in executive session rather than at a public meeting; (2) a quorum of the Board of the PBC was not present at that time; (3) the severance amendment imposed an improper restraint on the right of future Boards to terminate Fairman, since the PBC's statute stated that the general manager shall serve "at the pleasure of the Board"; (4) the severance provision does not conform to the CMPA; (5) the amendments contradict a prior order of the Control Board which approved severance pay only in an amount of six month's pay; (6) Fairman's services could not be paid for out of the appropriation for the fiscal year in which the contract was made; and (7) the amendments violate public policy in that they were not approved by the District of Columbia Council.[9] While acknowledging that this court can affirm on grounds different from those relied upon by the trial court, Fairman argues that these arguments should be rejected because they are new and/or contradictory, and they do not meet the exception for their consideration in that they were not pleaded by the parties and are not apparent from the record.

■ Generally, in reviewing a case *de novo*, this court may affirm an order for reasons different from those relied upon by the trial court, "as long as the grounds are apparent from the record and were pleaded by the parties." *Greycoat Hanover v. Liberty Mut. Ins.*, 657 A.2d 764, 767 (D.C.1995) (citing *Dale Denton Real Estate, Inc. v. Fitzgerald*, 635 A.2d 925, 927 (D.C.1993)). This waiver rule is "one of discretion rather than jurisdiction." *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33–34 n. 3 (D.C.2001) (citing *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988)). This court has recognized that "in 'exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record,' we may deviate from the usual rule that our review is limited to issues that were properly preserved." *Id.* (quoting *Williams v. Gerstenfeld*, 514 A.2d 1172,

8. Under judicial and equitable principles, appellant's arguments that the PBC had no authority to agree to submit disputes to arbitration under the authority of *District of Columbia v. Bailey*, 171 U.S. 161, 18 S.Ct. 868, 43 L.Ed. 118 (1898) fails. For the same reasons, we reject the District's arguments that the 1997 contract is unenforceable because the District had no authority to contract with its employees and that this agreement did not conform to the District's Comprehensive Merit Personnel Act (CMPA).

9. The District seems to attack the 1997 agreement on this ground also. As previously stated, the District is precluded from making this argument by the doctrines of judicial and equitable estoppel. In any event, the original agreement was approved by the Control Board, which had final authority over such contracts after Council approval. *See* D.C.Code § 47–392.3 (1997). There is no indication from the record that the Control Board acted without Council approval.

1177 (D.C.1986)). Generally, this exception will be applied "if the issue is purely one of law, particularly if the factual record is complete and a remand for further factual development would serve no purpose, the issue has been fully briefed, and no party would be unfairly prejudiced." *Id.* (citing 11 and 19 MOORE'S FEDERAL PRACTICE, §§ 56,441[3][c] and 205.05[2] (Matthew Bender 3d ed.2000)).

■ With one exception, appellant's belated arguments do not meet the requirements for application of the exception to the rule that issues not raised in the trial court will not be considered on appeal. That area concerns whether the 1999 amendments are void as against public policy because they were not approved by the District of Columbia Council as required by law.[10]

The District argued in the trial court that the arbitration award cannot stand because it contravenes paramount considerations of public policy. *See Lopata, supra,* 735 A.2d at 938. The District's public policy argument was based upon the claim that the amendments were approved in violation of the law that required the approval of the Control Board. The District now concedes that Control Board approval was not required at the time relevant to the execution of the amendments. However, it makes the quite related argument that the amendments required at least the approval of the Council, which was not obtained. This argument appears to raise a pure question of law, and no further factual record is required to address it. *See Reid Educ. Found., supra,* 766 A.2d at 33–34 n. 3. Therefore, we will consider the argument. *See id.*

When the PBC was created, it was given broad authority to "make and execute con-

---

**10.** The District's remaining arguments can be disposed of summarily. These arguments either do not meet the requirement of presenting exceptional circumstances warranting review to prevent a miscarriage of justice, or they do not meet the preconditions of presenting pure questions of law, having a complete factual record or avoiding unfair prejudice to either party. *See Reid Educ. Found., supra,* 766 A.2d at 33–34 n. 3 (citation omitted). First, the factual record for the District's arguments that the amendments were enacted in closed session and without a quorum present is not established. Second, contrary to the District's argument, it does not appear that the amended severance provision violates public policy by intruding upon the PBC Board's discretion to fire Fairman. *See* D.C.Code § 32–262.4(g) (1997) (providing that the General Manager "shall serve at the pleasure of the Board.") The severance provision does not preclude Fairman's termination; it merely provided him with a compensation arrangement if his termination occurred before his contract's termination date. Third, the District's argument based on the CMPA is to no avail because, after the first six months of its existence, the PBC was required to comply with only certain subchapters of the CMPA, none of which includes the CMPA's severance provision. *See* D.C.Code §§ 32–262.8(c) (1999) and –262.8(a)(1) -(a)(2). Fourth, the District concedes that the Control Board had not entered any order limiting severance pay to six months, but that the one year severance was reduced to six months based on informal staff discussions. Thus, any argument that the severance amendment contravened public policy by violating a prior Control Board order must fail. Finally, we decline to hold on this record that the 1999 amendments are void because they contravene D.C.Code § 1–503 (1992), which provides in pertinent part that no District employee shall be hired "unless such employment is authorized and payment therefor specifically provided in the law granting the appropriation or is authorized as hereinafter provided...." The statute is silent about the rights, if any, of individuals hired by a governmental entity in contravention of this provision. Thus, we discern no clearly defined public policy that would warrant invalidation of the amendments on that basis, particularly where, as here, this argument was raised for the first time on appeal and not fully developed.

tracts." *See* D.C.Code § 32–362.5(f) (1997). Certain contracts made by governmental entities required Council approval. *See* D.C.Code § 1–1130.[11] Section 1–1130 was first enacted in 1973 as part of the District of Columbia Self–Government and Governmental Reorganization Act (Home Rule Act). *See* D.C.Code § 1–1130 (1992) (unchanged from 1973 and 1981 versions). Subsequently, amendments were enacted to this law. Only those pertinent to the present issue need to be set forth here. In 1995, Congress enacted the District of Columbia Financial Responsibility and Management Assistance Act of 1995 (FMRAA). *See* Pub.L. No. 104–8, 109 Stat. 97 (1995). That act amended section 1–1130 by adding a section which required Council approval for contracts which involved expenditures of over one million dollars in a twelve month period. *See* D.C.Code § 1–1130(b). In 1996, Congress passed the Omnibus Appropriations Act of 1996, which included the District of Columbia appropriations for 1996. *See* Pub.L. No. 104–134, 110 Stat. 1321 (1996). The provisions of this Act, which became effective on September 9, 1996, amended section 1–1130 by adding the following provision that reads, in pertinent part, as follows:

(c) Multiyear contracts.

(1) The District may enter into multiyear contracts to obtain goods and services for which funds would otherwise be available for obligation only within the fiscal year for which appropriated.

(2) If the funds are not made available for the continuation of such a contract into a subsequent fiscal year, the contract shall be cancelled or terminated, and the cost of cancellation or termination may be paid from—

(A) appropriations originally available for the performance of the contract concerned;

(B) appropriations currently available for procurement of the type of acquisition covered by the contract, and not otherwise obligated; or

(C) funds appropriated for those payments.

(3) No contract entered into under this subsection shall be valid unless the Mayor submits the contract to the Council for its approval and the Council approves the contract (in accordance with criteria established by act of the Council). The Council shall be required to take affirmative action to approve the contract within 45 days. If no action is taken to approve the contract within 45 calendar days, the contract shall be deemed disapproved.

D.C.Code § 1–1130(c) (1997).

On August 7, 1996, after the 1995 Amendments in the FMRAA, but before the 1996 Amendments in the Omnibus Act, the D.C. Council passed the District of Columbia Health and Hospitals Public Benefit Corporation Act which created the PBC. *See* 43 D.C.Reg. 4962 (Sept. 13, 1996). Significantly, in section 301 of this proposed act, the D.C. Council asked Congress to exempt the PBC from the contract approval provisions of section 1–1130 as they existed at the time the bill was passed. *See* 43 D.C.Reg. 4980 (Sept. 13, 1996). However, Congress did not accept the recommendation. Although the PBC was exempted from several other statutory requirements, neither the PBC's governing statute nor the statutory history indicate that the PBC was to be exempt from contract approval requirements in effect at the time the PBC was created. In fact, the statutory history indicates the oppo-

---

**11.** D.C.Code § 1–1130 is now in D.C.Code § 1–204.51 (2001).

site. In section 301 of D.C. Law 11–212 (the law which eventually became the PBC's governing statute), the Council recommended that Congress amend section 1–1130 of the Home Rule Act to exempt the PBC from the statutory requirement of approval for contracts over one million dollars. However, Congress declined to do so.[12] In light of this history, it is clear that the PBC was subject to the Council approval requirement in section 1–1130.

▮ Since the PBC was subject to the approval requirements in section 1–1130, the question is whether the 1999 amendments required such approval. Subsection (c) states that the District may enter into contracts spanning several years although funds are only appropriated from the current fiscal year; however such contracts require Council approval. D.C.Code § 1–1130(c)(3). Fairman contends that there is no evidence in the record indicating that the 1999 Amendments constituted a multi-year contract. This argument is not persuasive. Under the amendments, Fairman's contract term was from October 1998 to September 2003. The appropriations bills in effect for fiscal 1998 and fiscal 1999 indicate that no appropriations would be available beyond each of those current fiscal years. *See* Pub.L. No. 105–100, § 108, 111 Stat. 2160 (1997) ("No part of any appropriation contained in this Act shall remain available for obligation beyond the current fiscal year unless expressly so provided herein."); Pub.L. No. 105–277, § 108, 112 Stat. 2681 (1998) (same for fiscal 1999). Since funds for the PBC were only available within the fiscal year for which appropriated, Fairman's contract falls within the scope of subsection (c) and requires approval of the Council.

The statutory pronouncement, that "[n]o contract entered into under this subsection shall be valid unless the Mayor submits the contract to the Council for its approval," expresses a clear legislative intent that any contract not so approved would be invalid. This policy, no doubt, seeks to promote financial accountability of executive branch agencies and entities. This lack of approval renders the Amendments invalid, and therefore calls into question the validity of the arbitration award to the extent that it relied upon them. The language of subsection (c) indicates that its intent was to prevent the District from entering into long term contracts where funding had not yet been appropriated unless the Council first approved this action. The 1999 Amendments required the District to pay Fairman up to five years of severance pay and benefits. The arbitration award predicated upon these Amendments appears to give Fairman roughly three years of severance pay and benefits. If the District were required to pay this award, the award would stand in clear contravention of the explicit statutory policy against entering into such long-term agreements in the absence of Council approval. In the absence of such approval, the 1999 Amendments violate the public policy, expressly provided for by law, against entering into multi-year contracts without legislative approval. An award based thereon would violate a clear and dominant public policy that would support vacating an arbitrator's award. *See Lopata, supra,* 735 A.2d at 938 (recognizing that the courts may refuse to enforce an arbitrator's decision based on a clear public policy ascertainable by reference to laws).

---

**12.** Indeed, in its next amendment to section 1–1130, Congress added several exceptions to the contract approval requirements. *See* D.C.Code § 1–1130(d) (1999), created by Pub.L. No. 105–33 § 11704(a), 111 Stat. 251 (1997) (adding exceptions for contracts of the Convention Center Authority, D.C. WASA, and highway improvement). However, Congress declined to grant such an exemption to the PBC. *See id.*

For the foregoing reasons, we conclude that Fairman is not entitled to severance pay under the 1999 amendments as the arbitrator concluded. However, Fairman remains entitled to severance based on the 1997 agreement the validity of which the District is now precluded from challenging. The calculation of the severance pay due under that agreement, which until this appeal the District was prepared to pay, appears to be straightforward. If the parties cannot agree to the amount, the dispute may be submitted for further arbitration on that issue. Accordingly, the trial court order vacating the arbitration award based on the 1999 amendments is affirmed, and the case is remanded to the trial court for further proceedings consistent with the opinion.

*So ordered.*

STEADMAN, Senior Judge, concurring:

Principles of judicial and equitable estoppel applicable to private parties do not translate readily where the government is a litigant and considerations of protection of the public fisc and the public interest are involved. *See, e.g., District of Columbia v. Gould,* 852 A.2d 50, 56–57 (D.C. 2004); *Mamo v. District of Columbia,* 934 A.2d 376, 386–87 (2007). However, in the particular and special circumstances presented here, coupled with the discretionary nature of permitting new arguments to be made even by the government for the first time on appeal, *see, e.g., District of Columbia v. Wical Ltd. P'ship,* 630 A.2d 174, 182–84 (D.C.1993), I concur in the ultimate conclusion that the District at this point may not challenge the validity of the original 1997 agreement, and I otherwise join the opinion of the court.