LASZLO N. TAUBER, M.D.
& ASSOCIATES, et al.,
Appellants,

v.

TRAMMELL CROW REAL ESTATE
SERVICES, INC., Appellee.

No. 96–CV–1827.

District of Columbia Court of Appeals.

Argued March 17, 1999.
Decided Oct. 14, 1999.

Gaspare J. Bono, Cleveland, OH, with whom Peder A. Garske, and Mark H. Tidman, Washington, DC, were on the brief, for appellants.

S. Scott Morrison, with whom Gloria B. Solomon, and Lynn Estes Calkins, Washington, DC, were on the brief, for appellee.

Before SCHWELB and REID, Associate Judges, and MACK, Senior Judge.

MACK, Senior Judge:

This is an appeal from an order confirming an arbitration award. Appellants contend the arbitrator "exceeded his powers," and thus that the trial court's order should be vacated or, in the alternative, appropriately modified. We disagree and affirm.

### I.

Appellants Laszlo N. Tauber, M.D. & Associates, *et al.* ("Tauber") entered into a "Commercial Leasing Agreement" ("bro-

kerage agreement") with appellee Trammell Crow Real Estate Services, Inc. ("Trammell Crow"). The agreement named Trammell Crow the exclusive agent for "locat[ing] suitable tenants and negotiat[ing] . acceptable leases" for an office building owned by Tauber. Because the building required extensive renovation, tenant occupancy was not expected for five to seven years after the agreement was signed. In exchange for their brokerage services, Trammel Crow agreed to be compensated on a commission basis.

Trammell Crow located a prospective renter, and on February 8, 1996, Tauber entered into a lease agreement with the tenant. The lease provides that the tenant will take occupancy and commence payment of rent on August 1, 2002. In accordance with their understanding of the brokerage agreement, Trammell Crow requested Tauber pay the commission fee from the date the lease was executed, February 8, 1996. Tauber refused, however, contending that the brokerage agreement did not require commission payments until the date the tenant took occupancy or until the tenant commenced payment of rent, August 1, 2002. Thus, the timing of the commission payments from Tauber to Trammell Crow forms the basis of this dispute.

In response to Tauber's refusal to make immediate payment, Trammell Crow requested Tauber arbitrate the dispute, in accordance with the brokerage agreement. Tauber refused to arbitrate, and instead filed a complaint in the District of Columbia Superior Court seeking a declaratory judgment that it had no obligation to make immediate commission payments to Trammell Crow. Trammell Crow responded to Tauber's complaint with a motion to stay the suit and compel arbitration. The trial court granted Trammell Crow's motion, and the dispute was sent to arbitration.

Following two days of hearings, the arbitrator issued an award requiring Tauber to make immediate commission payments in accordance with the brokerage agreement.[1] The arbitrator also found that if the tenant subsequently failed to take occupancy or make rental payments, Trammell Crow would have to refund the amount awarded. Finally, the arbitrator concluded that Tauber was required to pay interest from the date of the award at a rate of 8.25%.

Trammell Crow filed a motion in the Superior Court to confirm the arbitration award. The trial court confirmed the award and entered final judgment. Tauber appeals the trial court's confirmation of the arbitrator's ruling.[2]

## II.

On appeal, Tauber argues that the arbitrator exceeded his powers by: (1) requiring immediate payment of the commission fee; (2) awarding interest at a rate of 8.25% from the date of the arbitration decision; and (3) awarding commission payments based on an estimate of future operating expenses.[3]

 We review *de novo* a trial court's judgment confirming an arbitration award. *Grad v. Wetherholt Galleries*, 660 A.2d 903, 905 (D.C.1995). However, "[t]he law

---

1. In accordance with the arbitrator's interpretation of the brokerage agreement, Tauber was required to pay 50 percent of the total commission payment ($2,341,016.24) to Trammell Crow immediately. In addition, when the tenant took occupancy of the space or commenced payment of the rent, whichever occurred first, Tauber would pay the remaining 50 percent of the commission payments in twenty equal installments.

2. A trial court's order confirming an arbitration award is appealable, pursuant to D.C.Code § 16–4317(a)(3) (1997).

3. Tauber also argues, as a threshold matter, that the trial court erred in ordering the parties to enter arbitration. As discussed in the context of the arbitrator's scope of authority, *infra* at 7–8, Section 13.4's general language requiring arbitration for all disputes is susceptible of an interpretation that permits co-existence with the more specific arbitration provision in Section 5.7. Accordingly, we hold that the trial court did not err in ordering the parties to enter arbitration.

is well-settled that judicial review of arbitration awards is limited." *Shaff v. Skahill,* 617 A.2d 960, 963 (D.C.1992) (internal quotations omitted) (citations omitted). Specifically, D.C.Code § 16–4311(a) (1997) of the Arbitration Act limits the permissible grounds for vacating an arbitration award. This limited review serves "to attain a balance between the need for speedy, inexpensive dispute resolution, on the one hand, and the need to establish justified confidence in arbitration among the public, on the other." *Brandon v. Hines,* 439 A.2d 496, 509 (D.C.1981) (internal quotations omitted) (citations omitted). Here, appellants argue that reversal is warranted pursuant to § 16–4311(a)(3)[4] because the "arbitrator[ ] exceeded [his] powers."[5]

■■■ In reviewing whether an arbitrator has exceeded his powers pursuant to § 16–4311(a)(3), we do "not review [the] arbitration award on the merits." *Poire v. Kaplan,* 491 A.2d 529, 534 (D.C.1985); *see*

*United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.").[6] If an arbitrator "rule[s] only on matters within the scope of the governing arbitration clauses, he [will] not exceed his authority...."[7] *Poire, supra,* 491 A.2d at 533–34.

■■■ Here, whether the arbitrator ruled on matters within the scope of the governing arbitration clause, and thus did not exceed his authority, depends on the scope of Sections 13.4 and 5.7 of the brokerage agreement. Section 13.4 provides that "[t]he obligation of the parties to submit a dispute to arbitration *is not limited* to disputes arising under those Articles of this Agreement which specifically provide for arbitration." (Emphasis added.) Trammell Crow argues that this language requires arbitration for all disputes, includ-

4. In its entirety, D.C.Code § 16–4311(a) provides:

 (a) Upon application of a party, the Court shall vacate an award where:

 (1) The award was procured by corruption, fraud or other undue means;

 (2) There was evident partiality by an arbitrator appointed as a neutral [sic] or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

 (3) The arbitrators exceeded their powers;

 (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 16–4315, as to prejudice substantially the rights of a party; or

 (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 16–4312 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a Court of law or equity is not ground for vacating or refusing to confirm the award.

5. Appellant also asks that we evaluate the trial court's confirmation of the arbitrator's award under a "manifest disregard for the law" standard, citing case law from the United States Court of Appeals for the District of Columbia Circuit. *See Al–Harbi v. Citibank, N.A.,* 85 F.3d 680, 682 (D.C.Cir.1996). However, this judge-made standard is not prescribed by a federal statute, District of Columbia statute or our case law. Therefore, we refuse to extend the basis for considering vacation of an arbitrator's award in this manner.

6. "[F]ederal court decisions construing and applying the federal arbitration act may be regarded as persuasive authority in construing and applying the corresponding provisions of the District of Columbia arbitration act ...." *Hercules & Co. v. Beltway Carpet Serv.,* 592 A.2d 1069, 1073 (D.C.1991).

7. Also, an arbitrator is not required to "spell out his interpretation of the ... agreement" in order to make a valid award. *Poire, supra,* 491 A.2d at 534 (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)(other citations omitted)).

ing those regarding commission payments. Tauber, on the other hand, argues that this section does not create a general obligation to arbitrate all disputes. Instead, Tauber contends that Section 13.4 is "boiler-plate" language that is trumped by the more specific language of Section 5.7, requiring arbitration solely for disputes over whether there is "cause to terminate the agreement."

■ "Even if there were an ambiguity with respect to whether a matter was within the arbitrator's authority, the question must be resolved in favor of arbitration." *Poire, supra,* 491 A.2d at 534 n. 8. Furthermore, " 'an order to arbitrate the particular [dispute] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." ' *Hercules & Co. v. Shama Restaurant Corp.,* 613 A.2d 916, 922 (D.C.1992) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Certainly, here, the most that can be said of Tauber's position is that there is ambiguity between the general language of Section 13.4 and the specific language of Section 5.7. Therefore, we resolve this ambiguity in

favor of arbitration, and conclude that all disputes are within the scope of Section 13.4, and thus the arbitrator did not exceed his authority.

■ Next, although Tauber couches its disagreement with the arbitrator's conclusions as "excess[es] of power" under § 16–4311(a)(3), Tauber's arguments really take issue with the arbitrator's construction and interpretation of the contract. First, Tauber argues that the arbitrator misconstrued an apparent conflict between Sections 4.2[8] and 4.3[9] of the brokerage agreement, and incorrectly concluded that the commission payments were due immediately. Second, Tauber argues that the arbitrator misinterpreted the agreement as permitting him to go beyond the statutory provisions with regard to the appropriate interest rate[10] and the proper date from which the interest is calculated.[11] Finally, Tauber argues that the arbitrator miscalculated the commission due by applying estimated "operating expenses" in 2002, instead of using current actual operating expenses.[12]

Once it is determined that the arbitrator has not exceeded his authority pursuant to the arbitration clause, the issue as to "[w]hether the moving party is right or wrong is a question of contract interpreta-

---

8. Section 4.2 of the agreement provides:
 If [the Realtor] ... initiates the negotiations leading to the execution of a lease covering a portion of the commercial space in the Premises, and the tenant thereunder *actually takes occupancy of such space and/or commences the payment of rent,* [Tauber] shall pay [the Realtor] a leasing commission in an amount equal to ... 4.5% of the aggregate gross rentals payable over the lease term.... (Emphasis added.)

9. Section 4.3 of the agreement provides:
 All leasing commissions payable to [the Realtor] shall be paid in cash, one-half (50%) *when the lease is fully executed* and one-half (50%) upon occupancy or rent commencement.... (Emphasis added.)

10. *See* D.C.Code § 28–3302(a) (1996) ("The rate of interest in the District upon the loan or forbearance of money, goods or things in action in the absence of expressed contract, is 6% per annum.").

11. *See* D.C.Code § 15–109 (1995) ("In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only.").

12. The brokerage agreement provides that commission payments are calculated as a percentage of the "aggregate gross rentals." The agreement defines "aggregate gross rentals" as the "gross amount of payments to Owner made as base rent, fees, charges, or otherwise for the use or occupancy of the premises." The arbitrator interpreted this contract language as intending an estimate of operating expenses, while Tauber argues that the current actual operating expenses were intended by the contract. Notably, the arbitrator included a provision in the award, allowing for readjustment should the actual operating costs differ from his chosen figures.

tion for the arbitrator." *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Therefore, as long as the arbitrator is acting within the scope of his authority and "even arguably construing or applying the contract ... a court convinced he committed serious error ... [on the merits will] not ... overturn his decision." *United Paperworkers, supra,* 484 U.S. at 38, 108 S.Ct. 364. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp., supra* note 7, 363 U.S. at 599, 80 S.Ct. 1358.

Each of Tauber's above objections goes to the merits of the arbitrator's construction and interpretation of the brokerage agreement. Therefore, we may not vacate or modify the arbitrator's decision, even if our interpretation of the contract might be different.

Accordingly, we affirm.

*So ordered.*