Linda K. SHORE, Appellant

v.

GROOM LAW GROUP,
et al., Appellees.

Nos. 00–CV–1675, 01–CV–
82, 01–CV–1401.

District of Columbia Court of Appeals.

Argued Jan. 8, 2003.
Decided Jan. 27, 2005.
As Amended March 14, 2005.

Steven M. Schneebaum, Washington, DC, with whom Eric L. Siegel was on the brief, for appellant.

David M. Wachtel, Washington, DC, with whom David L. Rose was on the brief, for appellees.

Before TERRY and FARRELL, Associate Judges, and FERREN, Senior Judge.

TERRY, Associate Judge.

Appellant Linda Shore was a partner in a law firm, Groom Law Group, Chartered ("Groom" or "the firm"), until she was asked to resign after making comments to

a client's attorney that cast the firm in a negative light. After her departure, appellant sought arbitration of several grievances against the firm, alleging gender discrimination, retaliation for engaging in protected activity, breach of contract, and a variety of common law torts. Under her employment agreement with the firm, appellant was required to arbitrate her contract grievance, but in addition she voluntarily chose to submit her discrimination and common law claims to the same arbitration panel.[1] After an extensive hearing, the arbitration panel found that Groom had discriminated against appellant, but only in the manner and terms of her release from the firm. As a result, appellant's award was limited to one month's back pay, certain deferred compensation, and arbitration costs, excluding attorney's fees.

Before this court appellant seeks to litigate further many of the issues that were resolved against her by the arbitration panel and the trial court; at the same time, she raises some new claims. Because our review of arbitration decisions is very limited, and because we find no reason to disturb the rulings of the trial court or the arbitration panel on any of these issues, we uphold the original arbitration award and deny appellant any additional relief.

## I

### A. *Factual Background*

Appellant was originally hired as an associate by Groom in 1988[2] and became a partner five years later. Soon thereafter, however, some senior members of the firm began to be concerned about appellant's work performance. There were allegations that she missed deadlines, treated staff and clients poorly, did not relate well to some clients, and threatened to leave the firm and take business with her. Robert Gallagher, the firm's executive principal, became aware that clients had requested that appellant be taken off certain matters because her conduct at times was described as "out of control" and included the use of profane language during conference calls. On another occasion, one of Groom's largest clients began looking for alternative legal services because the client was unhappy with appellant's lack of responsiveness to its needs.

Questions were also raised about appellant's behavior within the firm. She reportedly initiated several heated exchanges with members of the firm's information services department that were described as disrespectful and "totally baseless." From 1996 through 1998, Groom conducted an internal survey of its partners to assess work compatibility; appellant received scores consistently below the firm average.

In the fall of 1997, Groom learned that appellant was looking for another job so that she could leave what she described as an "unfriendly environment for female attorneys." At that time Groom was working on a large project for Prudential Insurance Company, a client with which appellant had worked before. Because of the possibility that appellant might be leaving in the midst of that project, she was not assigned to work on it. When

---

1. Counsel for appellant sent a letter to Groom on February 16, 1999, advising Groom that while it did not have to arbitrate all of appellant's claims against the firm, appellant believed it would be "mutually beneficial to have all of the claims heard and resolved in a single proceeding." Groom agreed to this proposal in a letter to appellant's counsel dated May 9, 1999.

2. The firm was then known as Groom and Nordberg.

Prudential attorney Maureen Darmanin spoke with appellant shortly thereafter, appellant mentioned that she was considering leaving the firm because it had difficulty accepting women in leadership roles.

After learning of this conversation, members of the firm's executive committee met to discuss how appellant's conduct should be addressed. Because of her recent comments to clients and her apparent dissatisfaction with the firm, the executive committee recommended that appellant be terminated. Initially, she did not choose to leave the firm voluntarily. However, after a special meeting of the principals on March 4, 1998, it was mutually agreed that appellant would resign from the firm, effective March 31, 1998.[3]

Appellant's version of the relevant facts reflected her belief that the firm discriminated against women, and her search for employment elsewhere was directly related to Groom's failure to resolve this problem. She also downplayed the comments that she had made to Ms. Darmanin at Prudential, taking the position that, whatever their content, the conversation was within the scope of "protected activities" under the District of Columbia Human Rights Act and Title VII of the Civil Rights Act of 1964. Appellant also noted that even though she was not assigned to work on the larger ongoing project, she was able to continue working with Prudential on other matters. She further observed that during the special principals meeting at which her resignation was negotiated, the reason given for her release related to her communication to Prudential about her displeasure with the firm and its attitude toward women, not her allegedly

unsatisfactory work performance or conduct within the firm.

Less than a month after her departure from Groom, appellant was offered a position as a special partner with the firm of Hopkins and Sutter. In September 1998, however, appellant resigned from Hopkins and Sutter because she was in the later stages of pregnancy and was unable to access the firm's computer system from her home, where her doctors had advised her to remain until her baby was born. Shortly thereafter, appellant joined the firm of Silverstein and Mullens, P.L.L.C., where she became first a non-equity shareholder and, later, a participating shareholder.

### B. The Arbitration and Subsequent Proceedings

On February 16, 1999, in a letter from her counsel, appellant declared her intention to arbitrate certain claims against Groom which included (1) gender discrimination, (2) discrimination based on a perceived disability, (3) retaliation for engaging in protected activity, (4) defamation, (5) tortious interference with business relationships, (6) invasion of privacy, (7) breach of contract and (8) violation of the Employee Retirement Income Security Act (ERISA) by retroactively terminating her health care coverage. Appellant and the firm agreed that a three-member arbitration panel would follow some, but not all, provisions of the American Arbitration Association's National Rules for the Resolution of Employment Disputes (hereafter "AAA Rules"). The parties also agreed, with respect to the discrimination claims, to be bound by Title VII of the Civil

---

3. Appellant notified Groom after it had set the date for the special principals meeting that she was in the early stages of pregnancy and sought to postpone the meeting because it would result in added stress. The firm took the matter under advisement, but nevertheless held the meeting.

Rights Act, the Americans with Disabilities Act,[4] and the District of Columbia Human Rights Act.[5] As to the remaining contract and common law claims, the parties agreed that District of Columbia law would apply.

After an eight-day hearing,[6] the arbitration panel ruled on April 17, 2000, that Groom acted well within its contractual rights when it released appellant from the firm. The panel also concluded that the termination did not violate any of appellant's common law or statutory rights. The panel did find, however, that Groom had discriminated on the basis of gender "in the manner and terms of [appellant's] separation from the firm." Accordingly, she was awarded damages, but the award was limited to compensation lost during the transition from Groom to Hopkins and Sutter, certain deferred compensation that the firm already owed appellant, and costs associated with the arbitration of her grievance, not including attorney's fees.

Several weeks later, appellant filed a motion with the arbitration panel seeking reconsideration of her award. The following day she filed a motion in the Superior Court seeking to confirm in part, and to vacate and modify in part, the arbitration award. On September 18, 2000, the panel denied appellant's motion and also issued written findings of fact and conclusions of law to support its original unpublished decision of April 17, 2000.[7] In these findings, the panel listed as reasons for appellant's limited award her failure to prove that she

was released from the firm because of gender and the fact that she was out of work for only one month.

Shortly thereafter, Groom filed with the Superior Court a copy of the arbitration panel's written ruling of September 18. Appellant, in response, argued that the court should disregard the panel's September 18 decision because the arbitrators had no authority to review their prior award.

On October 26 the court denied appellant's motion and denied any subsequent relief, holding that she was not entitled to any further review of her grievance because she voluntarily submitted her claims to an arbitration panel and because it correctly applied the law to the facts of her case. Still unsatisfied, on November 6 appellant filed with the court a motion to reconsider pursuant to Super. Ct. Civ. R. 59, in which she argued for the first time that she had been released for engaging in activity protected by section 704 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3. Without discussion, the court later denied that motion and dismissed the case with prejudice.

Appellant's next communication with the arbitration panel came in January 2001, when she filed a motion alleging that Groom had wrongfully withheld funds that were owed to her as deferred compensation. After an exchange of correspondence between the parties which reflected a dispute as to how the deferred compensation was calculated, the panel ruled in

---

**4.** 42 U.S.C. §§ 12111–12117 (2000).

**5.** D.C.Code §§ 2–1401.01 et seq. (2001).

**6.** No record of the arbitration hearing was made by either party. As a result, our summary of what happened at that hearing is based on the existing record from the trial court, including that court's opinions.

**7.** No written decision was published earlier because both parties agreed, during a prehearing conference and thereafter, to eliminate a requirement that the panel provide a written explanation to support its decision. See AAA Rule 34(c) (stating that an arbitration award must be in writing and must be supported by written reasons "unless the parties agree otherwise").

favor of Groom on April 3. It held that appellant had failed to demonstrate any reason why the record should be reopened because there was no evidence that the deferred compensation had been incorrectly calculated or unlawfully withheld. The panel specifically stated that "nothing in the record and nothing in [appellant's] supplemental submissions to the Panel require that she be awarded any further relief."

On July 3, 2001, appellant filed a new motion in the Superior Court seeking to vacate all three of the arbitration panel's rulings. In this motion appellant contended, among other things, that the individual arbitrators had engaged in misconduct by receiving *ex parte* evidence. On October 16, 2001, the court affirmed the arbitration panel's decision of April 3 and denied appellant's motion to vacate the final award.

## II

It is firmly established that "[j]udicial review of arbitration awards is limited." *Brandon v. Hines,* 439 A.2d 496, 509 (D.C.1981) (citing *Sindler v. Batleman,* 416 A.2d 238, 242 (D.C.1980)). Typically, awards resulting from an arbitration "may be vacated or modified only on grounds clearly specified by statute." *Celtech, Inc. v. Broumand,* 584 A.2d 1257, 1259 (D.C. 1991); *see* D.C.Code § 16–4311(a) (2001).[8] Moreover, this court will not set aside an arbitration award for errors of either law or fact made by the arbitrator. *See Celtech,* 584 A.2d at 1258; *see also United*

*Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ("courts are not authorized to reconsider the merits of an [arbitration] award even though the parties may allege that the award rests on errors of fact"); *Poire v. Kaplan,* 491 A.2d 529, 534 (D.C. 1985). With rare exceptions, an award will not be disturbed unless the arbitration panel is found to have ruled on matters beyond the scope of its authority, *see id.* at 533–534, or unless it appears that the panel "manifestly disregarded the law . . . ." *Lopata v. Coyne,* 735 A.2d 931, 940 (D.C. 1999). Furthermore, "a party may not submit a claim to arbitration and then challenge the authority of the [arbitration panel] to act after receiving an unfavorable result." *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1357 (9th Cir.1983).

## III

Appellant argues that because she prevailed in showing that Groom discriminated against her in the manner and terms of her departure, she should have been awarded "make-whole relief," including attorney's fees. She also contends that the arbitration panel exceeded its authority and manifestly disregarded the applicable law when it failed to find that Groom had retaliated against her in violation of Title VII, and that her initial award should therefore be vacated. Appellant further maintains that the award should be vacat-

---

8. D.C.Code § 16–4311(a), part of the District of Columbia version of the Uniform Arbitration Act, provides in relevant part:

 (a) Upon application of a party, the Court shall vacate an award where:
 (1) The award was procured by corruption, fraud or other undue means;
 (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

 (3) The arbitrators exceeded their powers; [or]
 (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 16–4315, as to prejudice substantially the rights of a party. . . .

ed because the individual arbitrators engaged in misconduct by receiving *ex parte* evidence. We must also determine whether appellant was barred by the doctrine of *res judicata* from challenging, in her third petition to the Superior Court, the amount of money awarded to her in the form of back pay.

## A. *"Make–Whole Relief" and Attorney's Fees*

 Appellant maintains that because she established that Groom discriminated against her in the manner and terms of her release, she should have been awarded make-whole relief, including attorney's fees.[9] She contends that the panel exceeded its authority and disregarded applicable law by failing to do so. Because the panel did not exceed its authority or otherwise disregard the law, and because this court is without power to reevaluate the panel's factual findings on appellant's claim of discrimination, we reject these arguments. *See, e.g., Umana v. Swidler & Berlin,* 745 A.2d 334, 339 (D.C.2000) (court "[does] not have authority to set aside an arbitral award based on [its] review of the merits of the arbitrators' decision"); *Tauber & Associates v. Trammell Crow Real Estate Services, Inc.,* 738 A.2d 1214, 1219 (D.C. 1999) (court will not vacate or modify an

arbitration decision on the ground that the arbitrator misinterpreted the facts).

As we have said, this court has authority to vacate an arbitration award only when there is evidence that the panel exceeded its power or "manifestly disregarded the law." *See* D.C.Code § 16–4311(a); *Lopata,* 735 A.2d at 940. Appellant's assertion that the panel did so in this case must fail, primarily because the relevant statutes provide only that the court (or in this instance, as agreed by the parties, the arbitration panel) "may allow" or "may grant" appropriate relief, including attorney's fees. *See* 42 U.S.C. § 2000e–5 (k); D.C.Code § 2–1403.16(b).[10] From the panel's failure to grant appellant the relief she requested, it does not follow that it disregarded the law simply because it followed the statutory guidelines and chose not to award make-whole relief or attorney's fees. Moreover, while appellant cites several decisions [11] which collectively hold that when a party prevails on a statutory civil rights claim, that party should be entitled to attorney's fees, appellant's victory here was only on the limited question of whether Groom had discriminated against her "in the manner and terms of [her] separation from the firm," not in her larger claim that

---

**9.** Appellant contends that her claims should be reviewed under a standard of "heightened scrutiny." *See Cole v. Burns Int'l Security Services,* 323 U.S.App. D.C. 133, 154, 105 F.3d 1465, 1486 (1997). This standard, however, is reserved only for those cases in which an "employee is compelled as a condition of employment to arbitrate certain statutory claims." *Id.* In this case, appellant herself made the decision to arbitrate her statutory claims on her own in an effort to resolve the matter in a single proceeding; see note 1, *supra.* Accordingly, the "heightened scrutiny" level of review is unwarranted here.

**10.** Title VII of the 1964 Civil Rights Act provides that "[i]n any action or proceeding under this title, the court, *in its discretion, may*

*allow* the prevailing party ... a reasonable attorney's fee (including *expert* fees) as part of the costs ...." 42 U.S.C.2000e–5 (k) (emphasis added).

The District of Columbia Human Rights Act states that "[t]he court *may grant* any relief it deems appropriate, including the relief provided in [other sections of the Act]." D.C.Code § 2–1403.16(b) (emphasis added).

**11.** *E.g., Texas State Teachers Ass'n v. Garland Independent School District,* 489 U.S. 782, 791–792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988); *Henderson v. District of Columbia,* 493 A.2d 982, 999 (D.C. 1985).

her release itself was the result of discrimination.

■ As the Supreme Court has said, "[w]hen a plaintiff recovers only [minimal] damages ... the only reasonable [attorney's] fee is usually no fee at all." *Farrar v. Hobby*, 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *see also Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole"). Further, "[w]here recovery of private damages is the purpose of ... civil rights litigation, [an arbitration panel], in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar*, 506 U.S. at 114, 113 S.Ct. 566 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 585, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (Powell, J., concurring)).

In this case, appellant was successful on only one of her eight claims against Groom and received limited relief as a result. She initially sought almost $2 million in damages but was awarded only about three percent of that figure. Given that result, we cannot conclude that the panel either exceeded its authority or disregarded the law by not granting additional relief. As the trial court noted in its order of October 16, 2001, appellant "seems unwilling or unable to accept the fact that the arbitration results were largely adverse to her position." *See Hensley*, 461 U.S. at 436, 103 S.Ct. 1933 (one of the most important factors in determining whether an award of fees is reasonable "is the degree of success obtained"); *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437, 1440 (9th Cir.1994) (a party cannot challenge an arbitration panel's authority simply because it received an unfavorable result). Thus, because appellant's success was minimal, we will not set aside or alter the panel's award because it chose not to grant her attorney's fees or other relief.

■ Because appellant found employment less than a month after leaving Groom, the arbitration panel awarded her only one month's back pay. Appellant contends that because she suffered financial losses at her new job, Groom should be held responsible. Aside from the fact that this was a factual issue decided by the arbitration panel and thus was not appropriate for judicial second-guessing, *see Tauber*, 738 A.2d at 1219, the ability to recover back pay or to obtain make-whole relief terminates when a plaintiff finds substantially equivalent employment. *See, e.g., Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). Since appellant found substantially equivalent employment as a partner at another law firm, this form of relief is unavailable.

## B. *Title VII*

Appellant also claims that the arbitration panel disregarded the law when it failed to find that Groom retaliated against her in violation of Title VII. Specifically, she contends that because she was released from Groom because of her comment to Prudential attorney Darmanin, which she asserts is "protected," her termination was in violation of established law. We cannot agree. Even assuming that appellant's comments could be considered protected under relevant statutes, which is doubtful, there were other non-discriminatory reasons for appellant's termination which made Groom's decision to release her "well within its contractual rights." *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (holding that if an employer provides a non-discrim-

inatory reason for an employment decision, it can avoid Title VII liability).

As a general matter, the portion of Title VII pertinent here means that gender must be irrelevant in employment decisions, unless unique circumstances are present. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 240, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). To establish that an employment decision was motivated by a discriminatory purpose, the plaintiff has the burden of making a *prima facie* showing of discrimination.[12] *See, e.g., McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Once a plaintiff proves that gender played a role in the employment decision, the burden shifts to the defendant employer to show some legitimate, non-discriminatory reason for the employment action. *Id.* If the defendant offers a legitimate reason for the employment decision, the plaintiff then has an opportunity to show that this reason was not the true reason, but was a pretext for discrimination. *Id.* at 804, 93 S.Ct. 1817. This was the standard used by the arbitration panel, and the Superior Court held that the panel correctly applied the law to the facts as it found them. Appellant nevertheless challenges the panel's findings, claiming that it could not have made a "serious effort to identify and deal with the statutory issues."

■ Appellant's argument that she was wrongfully terminated rests on the assertion that, were it not for her comments to Ms. Darmanin, she would not have been asked to leave the firm. This assertion ignores substantial evidence in the record that, well before her conversation with Ms. Darmanin, she had been the subject of numerous complaints from clients regarding her performance, had

been asked to improve her demeanor when dealing with clients and members of the firm, and had consistently received below average scores on a workplace compatibility survey. Appellant also ignores the fact that she told firm principals that she was looking for a position with another firm, so that the possibility of her taking business with her raised concerns about her loyalty.

While none of these reasons appeared in Groom's official rationale at the principals meeting on March 4, 1998, at which the firm decided to accept appellant's resignation, there was considerable evidence about appellant's conduct presented by Groom at the arbitration hearing, including testimony from several individuals, written memoranda, and e-mails highlighting her deficiencies. This evidence readily supports the panel's conclusion that appellant would have been severed from Groom regardless of her comments to Ms. Darmanin.

Further, when an employee's conduct begins to interfere with job performance, it is no longer protected. *See, e.g., Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 230–233 (1st Cir.1976) (holding that an employer has a legitimate interest in seeing that an employee performs her work well, and that Title VII "does not afford an employee unlimited license to complain at any and all times and places"). Appellant's comments to Ms. Darmanin could also have fallen into this category, thus further insulating Groom from Title VII liability.

### C. *Alleged Ex Parte Communications*

■ Because of alleged *ex parte* communications between Groom and the arbitration panel, appellant claims that the

---

12. In the District of Columbia, a plaintiff must prove (1) that she engaged in a protected activity, (2) that her employer took an adverse personnel action against her, and (3) that there was a causal connection between the two. *See, e.g., Howard University v. Green,* 652 A.2d 41, 45 (D.C.1994).

arbitration award should be vacated and that a new proceeding before a new panel should be ordered. She contends that the panel relied on assertions made by Groom in correspondence without notifying her or giving her an opportunity to respond. She also alleges that, as of the time of her appeal, these materials had not yet been provided to her. The communications at issue dealt with how the panel came to learn that Groom had paid appellant a certain portion of the back pay award without direct evidence to that effect in the record. Appellant surmises that the panel could not have reached its conclusion on its own, without reliance on undisclosed communications.

Appellant's recollection of the record is inadequate, and as a result her argument fails.[13] In a letter sent to appellant in May 2000, Groom stated that it was paying her $19,519 in back pay. On March 21, 2001, Groom sent a letter to the arbitration panel, with a copy to appellant, indicating that she was entitled to a back pay figure of $18,031.[14] The difference of $1,488 between the two amounts represents the interest that accrued on the back pay from the date it was awarded by the panel until its disbursement. Despite the fact that this difference can be readily understood as a matter of simple arithmetic, appellant claims that the panel "could not have concluded that $18,031 was principal and $1,488 was interest unless it relied on undisclosed communications." In the first place, the letters about which she complains plainly do not qualify as *ex parte* communications because copies were provided to appellant at the time they were sent. Moreover, even if any *ex parte* communications were made, individual communications with the arbitration panel were not prohibited in this case because the parties specifically agreed to disregard Rule 22 of the AAA Rules, which prohibits *ex parte* contacts.

### D. *Res Judicata*

■ In the last of appellant's three appeals to the Superior Court in July 2001, she sought to revisit many of the issues, including a challenge to the calculation of her initial award, that were addressed by the arbitration panel in its decisions of April and September 2000. We hold that, because the arbitration decisions were final and were already confirmed by the Superior Court, review of the merits of appellant's claim was precluded under the doctrine of *res judicata*. *See, e.g., Carr v. Rose*, 701 A.2d 1065, 1070 (D.C.1997).

■ An arbitration award is deemed final as long as it shows an intention to resolve the issues submitted, even if the arbitration panel retains jurisdiction to deal with any lingering matters.[15] *See*

---

**13.** Appellant also asserts in her brief that because of Groom's *ex parte* contacts with the panel, the award should be set aside under District of Columbia law. She cites no case law from this jurisdiction to support this assertion, however, and we are aware of none. We therefore do not address it further.

**14.** Appellant also maintains that the figure representing her back pay award was incorrectly calculated. Insisting that if the panel had followed the information provided in the Executive Committee Compensation report, it should have come up with a figure of $17,995, not the $18,031 stated by Groom. The firm acknowledges in its brief that it was likely that, when it was calculating the amount due, the percentage used by Groom was two-tenths of a percent higher than it should have been, resulting in a slight increase in favor of appellant. Because this error was so slight, and (more importantly) because it resulted in a benefit for appellant, the panel did not exceed its authority by approving it. *See Lopata*, 735 A.2d at 942–943 (only in exceptional circumstances, such as "gross mistake," will a court interfere with an arbitration award).

**15.** The panel even noted in its decision denying appellant any additional relief that it had "concluded its work. The Award is final, and the matter is closed."

*generally Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir.1999). Moreover, a confirmed arbitration decision, such the one in this case, is considered final "because for all practical purposes it signifies the end of the proceeding on the merits." *Umana v. Swidler & Berlin*, 669 A.2d 717, 721 (D.C. 1995); *see Brandon*, 439 A.2d at 507–508. Further review of claims that have been litigated and finally decided is not permissible. *See Carr*, 701 A.2d at 1070. As the trial court accurately noted in its decision of October 16, 2001, appellant "cannot successively litigate the same issues until she is victorious."

## IV

For the foregoing reasons, we find no basis for setting aside the arbitration award. The orders of the trial court denying appellant any additional relief and denying her motion to reconsider the arbitration award are therefore

*Affirmed.*