**MOTOR CITY DRIVE, L.L.C., Appellant,**

v.

**BRENNAN BEER GORMAN MONK ARCHITECTS AND INTERIORS, P.L.L.C., Appellee.**

No. 04–CV–1331.

District of Columbia Court of Appeals.

Argued Dec. 16, 2005.

Decided Jan. 12, 2006.

an *inter vivos* gift to Mr. Stefan. For the reasons stated, I would answer that question in the negative.

Norman H. Singer, Bethesda, MD, with whom Daniel H. Anixt was on the brief, for appellant.

Michael B. Bomba, with whom James F. Lee, Jr., was on the brief, Washington, for appellee.

Before SCHWELB, REID and FISHER, Associate Judges.

REID, Associate Judge:

Appellant Motor City Drive, L.L.C. ("MCD") appeals from the trial court's judgment denying its motion to vacate or modify an arbitration award in favor of appellee Brennan Beer Gorman Monk Architects and Interiors, P.L.L.C. ("BBGM"). MCD claims that the trial court (1) applied the wrong standard of review with respect to the issue of arbitrability of BBGM's claim; (2) erred in concluding that MCD waived its objection to consideration of bills incurred by Loring & Associates, Inc. ("Loring"), a mechanical, engineering, and plumbing contractor; and (3) made factual errors and incorrect legal determinations. Discerning no error, we affirm the trial court's judgment.

## FACTUAL SUMMARY

The record before us shows that MCD, the owner of an office building located in Bethesda, Maryland, and BBGM, an architectural firm based in the District of Columbia, entered into a "Standard Form of Agreement Between Owner and Architect with Standard Form of Architect's Services" on March 8, 2001 ("Agreement"). The Agreement involved the "Phase II extension" of MCD's office building. Paragraph 1.3.5.1 of the Agreement included a standard arbitration clause: "Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration."

The Agreement was executed following disputes between MCD and the initial architectural, and mechanical, engineering, and plumbing firms for the project. Although the Agreement indicated that the initial mechanical, engineering, and plumbing firm would continue with the project, BBGM had to engage another firm to complete the drawings required to be submitted for the proper construction permit. BBGM engaged Loring, and the terms of Loring's work were set forth in an agreement which was never signed. Nevertheless, Loring completed the work specified in the unsigned agreement.

Subsequently, a disagreement surfaced between BBGM and MCD as to the amount of the architectural fees owed to BBGM. Eventually, on May 19, 2003, BBGM filed a demand for arbitration with the American Arbitration Association ("AAA"), claiming that MCD owed it $69,683.09 plus interest. During the discovery phase of the arbitration, counsel for MCD demanded the time sheets, invoices and other documents relating to Loring. Although counsel for BBGM indicated that he was "somewhat puzzled" by the request to review the Loring documents because MCD's agent had "agreed to retain ... Loring on [the] project and [to] compensate it on a lump sum basis," the parties arranged for a mutual review of requested documents.

Although the parties insisted during oral argument that, at the commencement of the two-day hearing (December 15–16, 2003) on MCD's arbitration demand, MCD raised a challenge to the arbitrability of a portion of BBGM's claim, and BBGM asserted that MCD had waived its challenge because of the untimeliness of its challenge, the arbitrator makes no mention of this matter in his award, dated January 2, 2004. Instead, after hearing testimony

from MCD, BBGM, and Loring, assessing the credibility of those who testified, listening to the arguments of the parties, and reviewing documentary evidence provided by the parties, the arbitrator found, in part, that Loring "billed [BBGM], FORTY SEVEN THOUSAND EIGHT HUNDRED TWO DOLLARS AND EIGHTY TWO CENTS ($47,802.82) (including expenses), represent[ing] the amount of work performed by Loring through the submission of the construction documents to the County for approval...." The arbitrator also asserted that MCD "acknowledged that the sum [alleged] was acceptable to it for Loring[, and] also acknowledged on various occasions both the need for a[ ] [mechanical, engineering, and plumbing firm], as well as the hiring of Loring." Moreover, the arbitrator "expressly [found] that [MCD] knew of, approved of, and needed the services of Loring as a sub-consultant to BBGM."

Furthermore, the arbitrator determined that:

> The contract specifically provides that the "instruments of service" (in this case, in particular, the plans prepared by BBGM and Loring) remain the property of BBGM until BBGM is paid therefore. Once paid, however, those "instruments of service" become the property of [MCD] and [MCD] is then entitled to all electronic, print, and other copies or versions thereof.

Based on the services rendered by Loring and other components of BBGM's total claim, the arbitrator determined that MCD "shall pay [BBGM] the sum of SIXTY THOUSAND NINE HUNDRED SEVENTY DOLLARS AND SIXTY–SIX CENTS ($60,970.66), ... [and][u]pon payment by [MCD] in full, [MCD], in turn, is entitled to the 'instruments of service' in print and electronic form from [BBGM] and Loring."

On March 29, 2004, MCD filed its motion to vacate or modify the arbitration award. The trial court "conclude[d] that the arbitrator did not exceed his powers in the Arbitration Award," and that the award "was not in disregard of the law or contrary to undisputed evidence." The trial court denied MCD's Super. Ct. Civ. R. 59(e) motion for reconsideration. MCD filed a timely notice of appeal.

## ANALYSIS

MCD claims that the trial court applied the wrong standard of review. Specifically, it argues that "the trial court erroneously employed an 'extremely limited' standard of review to its review of the arbitrator's decision, rather than the *de novo* standard of review it should have used," because of MCD's contention "that the arbitrator had exceeded his powers by awarding a sum of $26,400.00 to BBGM for professional billings by Loring, a third party not named in the Agreement." In a related argument, MCD contends that "[t]he trial court also erred because it apparently concluded in its Order that MCD waived its objections to consideration of Loring's bills in the arbitration...."

The waiver issue derives from BBGM's assertion that MCD waited too long to raise its objection to the scope of the arbitration claim. We are handicapped in considering this issue because the parties have not given us a transcript of the arbitration hearing and they inform us that none is available. We conclude, however, that the portion of the claim based on services rendered by Loring was arbitrable. We therefore need not resolve the issue of waiver.

In *Shore v. Groom Law Group*, 877 A.2d 86 (D.C.2005), this court reiterated the judicial review standard for arbitration awards:

> It is firmly established that "judicial review of arbitration awards is limited."

Typically, awards resulting from arbitration "may be vacated or modified only on grounds clearly specified by statute." *Celtech, Inc. v. Broumand,* 584 A.2d 1257, 1259 (D.C.1991); *see* D.C.Code § 16–4311(a) (2001). Moreover, this court will not set aside an arbitration award for errors of either law or fact made by the arbitrator. *See Celtech,* 584 A.2d at 1258; *see also . . . Poire v. Kaplan,* 491 A.2d 529, 534 (D.C.1985). With rare exceptions, an award will not be disturbed unless the arbitration panel is found to have ruled on matters beyond the scope of its authority, or unless it appears that the panel "manifestly disregarded the law . . . ." *Lopata v. Coyne,* 735 A.2d 931, 940 (D.C.1999) . . . .

*Id.* at 91 (footnote and other citations omitted). One of the statutory grounds for vacating an arbitration award is the arbitrator exceeded his powers.[1] "[W]hether an issue is arbitrable is [a question] of law, and a court must make its own determination on the issue." *Poire, supra,* 491 A.2d at 533 (citation omitted). The standard of review of arbitrability, in other words, is *de novo.*

We are not certain whether the trial court conducted *de novo* review of the arbitrability issue. On one hand, the cases cited by the trial court in its standard of review discussion include ones in which this court has explained that the issue of arbitrability is one of law. On the other hand, the trial court does not explicitly state that it is conducting *de novo* review of this issue. We need not remand for clarification, however, because we have a sufficient record to resolve this issue of law ourselves.

If there is no dispute concerning the validity of the arbitration clause that is contained in the agreement or contract between the parties, "a presumption in favor of arbitration attaches." *Lopata, supra,* 735 A.2d at 936 (citing *Masurovsky v. Green,* 687 A.2d 198, 204 (D.C.1996)) (other citation omitted). Here, MCD does not take issue with the validity of the arbitration clause set forth in paragraph 1.3.5.1 of its Agreement with BBGM. Consequently, just as we recognized in *Lopata,* in signing its Agreement with BBGM, MCD "agreed to arbitrate" "[a]ny claim, dispute or other matter in question arising out of or related to [its] Agreement." *Id.* at 936. MCD's dispute with BBGM not only "arose out of" its Agreement, but also is "related" to that agreement. This is equally true of that portion of BBGM's claim which seeks payment of money which it in turn owes to Loring. Indeed, MCD does not contest that the amount claimed for services rendered by Loring arises out of and is related to the Agreement. Instead, it protests that Loring was not a party to the arbitration agreement and that the arbitrator had no authority to award money to a "third party" or a "non-party" to the Agreement. We believe that MCD misconceives the nature of the arbitration proceeding. This is not a case where the arbitrator was receiving claims by a stranger to the arbitration agreement. This was simply an arbitration of claims by BBGM against MCD. The fact that BBGM was asserting claims for money that it in turn owed to Loring does not mean that the arbitrator was exceeding the scope of his authority.

---

1. Among the statutory grounds for vacating an arbitration award are the following:

   (1) The award was procured by corruption, fraud or other undue means;

   (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

   (3) The arbitrators exceeded their powers . . . .

   D.C.Code § 16–4311(a) (2001).

Even though Loring provided evidence to support BBGM's claim, Loring was not a party to the arbitration.

■ Finally, we summarily dispose of MCD's contentions that the arbitrator made "incorrect factual determinations," and that with respect to a separate component of BBGM's claim, the trial court "mistakenly concluded that the arbitrator did not make an 'ambiguous, indefinite or irrational' decision in awarding $20,000 to defendant for its service to 'review/revise/sign' drawings." We do not set aside arbitration awards for errors of fact. *Shore, supra,* 877 A.2d at 91. Moreover, " 'a party seeking to set aside [an arbitration award] has a heavy burden.' " *Schwartz v. Chow,* 867 A.2d 230, 233 (D.C. 2005) (quoting *Lopata, supra,* 735 A.2d at 940) (other citations omitted). Nor do we see any indication in the record before us that the arbitrator "manifestly disregarded the law," *Shore, supra,* 877 A.2d at 91, and his decision " 'does not approach being arbitrary and capricious.' " *Schwartz,* 867 A.2d at 233 (quoting *Lopata,* 735 A.2d at 940). Indeed, MCD conceded during oral argument that the payment of $20,000 for Loring for the drawings was properly considered during the arbitration proceeding. On this record, then, we are satisfied not only that MCD did not meet its heavy burden with respect to its motion, but also that the trial court properly denied MCD's motion to vacate or modify the arbitration award in favor of BBGM.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*